STATE EX REL. PLEHN, Appellant, vs. WIDULE, Respondent.

*April 15—October 3, 1916.*

*Elections: Contests:* Quo warranto: *Evidence: Competency: Uncom-
pleted recount: Ballots: Tally sheets.*

1. A partial recount of ballots under sec. 86, Stats. 1913 (sec. 6.66,
   Stats. 1915), which was stopped by an order of court before it
   was completed, was not competent evidence, in a subsequent ac-
   tion of *quo warranto*, to impeach the determination of the board
   of county canvassers that the defendant was duly elected to a
   county office.

2. Where a statute (sec. 80, Stats. 1913; sec. 6.60, Stats. 1915) providing for the preservation and protection of ballots to be used in a contest has not been complied with, or where it appears that the integrity of the ballots has not been preserved, such ballots are not competent evidence to impeach the determination of the board of canvassers.

[3. Whether the tally sheets kept by the precinct election officers and returned to the county clerk pursuant to secs. 42a, 78, Stats. 1913 (secs. 6.28, 6.59, Stats. 1915), are competent evidence to impeach the determination of the board of canvassers, is not decided.]

WINSLOW, C. J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: GEO. W. BURNELL, Judge. *Affirmed.*

This is an action of *quo warranto* brought by plaintiff against the defendant to determine the right of defendant to hold the office of county clerk of Milwaukee county, Wisconsin. The defendant was a candidate for re-election at the general November, 1914, election, held November 3, 1914, and the plaintiff and others were also candidates at said election for the same office. The board of county canvassers, proceeding according to law, determined that the defendant was duly elected and issued the certificate of election to him. In due time a recount in certain precincts was asked by the plaintiff under sec. 86, Stats. 1913, both plaintiff and defendant designating the precincts in which they desired a recount according to sec. 86.

During the recount and before completion thereof this court ordered that all recount proceedings under sec. 86, Stats. 1913, cease, and the canvassers were required by *mandamus* to make a statement of the votes cast for county officers, file the same with the county clerk, and publish the result, and that the county clerk issue certificates of election thereon as prescribed by secs. 83, 84, and 85, Stats. 1913. *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542.

In compliance with the order of this court in the matter the recount ceased before completion. Afterwards, in attempted

compliance with sec. 86, Stats. 1913, the plaintiff appealed
to the circuit court for Milwaukee county from the action of
the board of canvassers, and the circuit judge issued an order
directing the county clerk to transmit to the clerk of the court
forthwith all ballots, papers, and records affecting such ap-
peal, and fixing a time and place for hearing thereon in open
court.    Upon the hearing before the circuit court objection
was made to the jurisdiction of the court upon the appeal, and
after hearing and on January 14, 1915, the appeal was dis-
missed.    In dismissing the appeal the circuit court referred
to sub. 4 of sec. 86, Stats. 1913, which provides that "Nothing
in this section shall be construed to abrogate any right or
remedy that any candidate may now have affecting the trying
of title to office," as preserving remedies for the trial of title
to office such as *quo warranto* or other proceeding, and pro-
vided in the order of dismissal "that all ballots, papers, rec-
ords, and all petitions transmitted, left, or filed with the clerk
of this court and which are now in his possession or under his
control which have any reference whatever to, or are con-
nected in any manner with, said subject matter of election,
or recount, or appeal, be preserved and retained in the vaults
of said clerk of court, and under seal. . . ."

Before the dismissal of appeal the present action was com-
menced January 4, 1915.    The court below, after hearing
the case, found that the defendant was the "duly certified,
elected, qualified, and acting county clerk of Milwaukee
county," and that the plaintiff's complaint should be dis-
missed.

It appears in the record that certain tally sheets and re-
turns of inspectors were put in evidence on the trial below
which showed that the tally sheet from the fourth precinct,
Eighteenth ward, gave plaintiff nineteen votes, while the re-
turn of the inspectors certified only nine votes for that pre-
cinct.

Judgment was entered dismissing the complaint with costs,
from which judgment this appeal was taken.

For the appellant there was a brief by *Lehr & Kiefer,* attorneys, and *J. Elmer Lehr* and *Edwin W. Knappe,* of counsel, and oral argument by *Mr. J. Elmer Lehr* and *Mr. Knappe.*

For the respondent there was a brief by *W. H. Timlin, Jr., Patrick W. Dean,* and *Emil Hersh,* and oral argument by *Mr. Timlin* and *Mr. Hersh.*

The following opinions were filed May 2, 1916:

KERWIN, J.   The court below held that the evidence given, offered, and received in that court was insufficient in fact and incompetent in law to successfully impeach the determination of the board of county canvassers; and that the defendant is the duly certified, elected, qualified, and acting county clerk of Milwaukee county.

The appellant offered evidence tending to show the result of the recount so far as it had proceeded, and it is claimed by counsel for appellant that by correcting the returns to agree with such recount and without further proceeding with the recount it appears that plaintiff has the greatest number of the votes cast for county clerk at the November, 1914, general election.   Conceding, without deciding, that when the recount stopped, the result up to that point showed that plaintiff had the greatest number of the votes cast for county clerk, the question arises whether a partial recount in the precincts designated in the application for recount was sufficient to impeach the determination of the board of county canvassers. In order to establish that the plaintiff was elected and overcome the determination of the board of county canvassers, it was necessary for the plaintiff to establish in some proper legal proceeding that the plaintiff was elected and the determination of the board erroneous.

The plaintiff was at liberty to pursue the remedy provided by statute for a recount and appeal from the determination of the board on such recount, or he might bring an action of *quo*

*warranto* to try title. He first chose the former remedy, and proceeded with the recount until it was stopped by the order of this court. *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542. The precincts designated by the parties in the recount proceeding not having been completed, there was no determination by the board. The statutory remedy on recount not having been carried out to completion, there was no determination of the matter; hence the partial recount was not competent evidence in the present action. The determination of the board of county canvassers could be impeached by a recount only when the recount was conducted and completed in the manner provided by statute and showed that the determination of the board of canvassers was erroneous and that the plaintiff had received the greatest number of the votes cast for county clerk. The statute clearly provides how the recount shall be conducted and com pleted and provides, among other things, that on recount the ballots "in every precinct so specified" in the demand for recount shall be recounted. Sec. 86, Stats. 1913. A partial recount in the precincts demanded is not a compliance with the statute and no determination can be made thereon authorizing an appeal under the statute, sub. 3, sec. 86, Stats. 1913. The statute not having been complied with, the recount proceedings were not competent evidence to impeach the determination of the board of county canvassers. *Bradbury v. Wightman,* 232 Mo. 392, 134 S. W. 511.

Error is assigned on refusal of the court to allow the ballots to be counted on the request of plaintiff. Sec. 80, Stats. 1913, provides in part:

"Before separating, the inspectors shall fold in two folds and string closely upon a single piece of flexible wire, all ballots which shall have been counted by them, except those marked 'Objected to,' unite the ends of such wire in a firm knot, seal the knot in such manner that it cannot be untied without breaking the seal, inclose the ballots so strung in a secure canvas covering and securely tie and seal such canvas

covering with official wax impression seals, to be provided, by the inspectors in such manner that it cannot be opened without breaking the seals, and return said ballots, together with the package containing the ballots marked 'Defective or objected to' in such sealed canvas covering to the county clerk, and such officer shall carefully preserve said ballots for sixty days, and at the expiration of that time shall destroy them by burning without previously opening the package. . . . Provided, that if any contest of the election of any officer voted for at such election shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest is finally determined. In all cases of contested elections the parties contesting the same shall have the right to have said ballots opened, and to have all errors of the inspectors in counting or refusing to count any ballot, corrected by the court or body trying such contest, but such ballots shall be opened only in open court or in open session of such body and in the presence of the officer having the custody thereof."

The evidence is overwhelming that this statute was not complied with in preserving the integrity of the ballots. The court below so held in a written opinion in the record, and held that the evidence was uncontradicted that one bag in which ballots were kept, when taken before the board of canvassers, was open.

There was direct evidence that the ballots had been tampered with before the trial of this action. It was established on the trial without dispute that at least one of the bags containing ballots, when taken before the board of canvassers on the alleged recount, was open, and was still open at the time of trial of this action. There was also other evidence strongly tending to show that in other respects the ballots had not been protected so as to preserve their integrity. Under such circumstances the court properly refused the plaintiff's request to recount the ballots.

It is well settled that where statutes providing for the preservation and protection of ballots to be used in a contest have not been complied with, or where it appears that the integrity of the ballots has not been preserved, such ballots are not competent evidence to impeach the determination of the board of

canvassers.  *Farrell v. Larsen,* 26 Utah, 283, 73 Pac. 227; *People ex rel. Williams v. Cicott,* 16 Mich. 283; *Martin v. Miles,* 40 Neb. 135, 58 N. W. 732; *Fenton v. Scott,* 17 Oreg. 189, 20 Pac. 95; *Beall v. Albert,* 159 Ill. 127, 42 N. E. 166; *Thornhill v. Wear,* 131 La. 739, 60 South. 228; *DeLong v. Brown,* 113 Iowa, 370, 85 N. W. 624; *Edwards v. Logan,* 114 Ky. 312, 70 S. W. 852; *People v. McClellan,* 124 App. Div. 215, 108 N. Y. Supp. 765.

Whether the tally sheets were competent to impeach the return of the board of canvassers we need not and do not decide, because, even if the plaintiff be given credit for the discrepancies in his favor appearing from the tally sheets and return, the defendant would still have the greater number of votes.

We are convinced that the court below was right in holding that there was no proof sufficient to impeach the determination of the board of canvassers and in denying the request of plaintiff to count the ballots.

*By the Court.*—The judgment is affirmed.

WINSLOW, C. J. (*dissenting*).  I do not agree with this decision and I want to state why.

It is not vastly important whether *Mr. Plehn* or *Mr. Widule* was elected county clerk so far as the performance of the duties of the office are concerned; probably one could perform them as well as the other; but it is vastly important that the man actually elected should be seated.

One of the basic principles on which our government is founded is the principle that the qualified candidate who receives the greatest number of votes is the only rightful officer, and whenever it appears that a minority candidate has been seated or that a court, when duly invoked, refuses to investigate the question, and leaves a grave doubt as to the actual incumbent's right to the office, respect for democratic government receives a serious shock.  My strong impression is that one of these things has happened here.

Let us consider briefly the admitted facts: The county board of canvassers determined by the original canvass that the plaintiff received 19,891 votes and the defendant 19,918 votes, a difference of only 27 votes.   This result was reached by simply compiling and adding together the returns from the precinct officers.   Application for a recount of a considerable number of precincts pursuant to the provisions of sec. 86, Stats. 1913 (sec. 6.66, Stats. 1915), was made by the relator and similar applications were made by the defendant and by other candidates, and the canvassing board started to make the recount.   The recount was stopped before its completion by the judgment of this court December 12, 1914, in the case of *State ex rel. Zabel v. Board of Canvassers,* 159 Wis. 249, 150 N. W. 554, but the board had already counted and tabulated the votes cast for county clerk in nine of the disputed precincts and had published the results of such recount in those precincts as appears by the official record of their proceedings.   In these nine precincts the official recount thus made and finished showed a total of 1,593 votes cast for *Widule* as against 1,605 shown by the original canvass, and 862 votes cast for *Mr. Plehn* as against 856 shown by the original canvass.   It appeared, therefore, that in these precincts the relator had made a net gain of 18 votes.   This left a difference in favor of *Mr. Widule* of but 9 votes.   It further appears without dispute that the official tally sheet kept by the election officers in the fourth precinct of the Eighteenth ward shows 19 votes cast for *Mr. Plehn,* while the written statement returned to the county clerk states that there were but 9; also that the tally sheet in the fifth precinct of the same ward showed 20 votes cast for *Mr. Plehn,* while the written statement states that there were 19.

These facts are all undisputed.   If, therefore, the recount made by the county canvassers in the nine precincts is better evidence of the actual vote than the original county canvass, and if the tally sheets are better evidence than the written

statements of the precinct officers, it is established *prima facie* by this evidence that *Mr. Plehn* received two votes more than *Mr. Widule,* because the former gentleman has gained 17 votes and the latter gentleman has lost 12 votes, making a net gain for *Mr. Plehn* of 29 votes.

It is said that the recount is not good evidence because it never was completed. I am unable to appreciate the force of this argument. The law providing for the recount is a valid law. It emerged from the *Husting* and *Zabel* cases considerably disfigured but still a valid law. The canvassing board had acted in strict accordance with its provisions in recounting the votes in the nine precincts above referred to. So far as those precincts were concerned its labor was complete and the results recorded. The original ballots had been counted under the eyes of counsel for both contestants and probably of the contestants themselves. There is nothing in the evidence tending to impeach the correctness of the results, and they are official results reached under the provisions of a valid law. True, this court held that the recount must cease at this point because it concluded that the county and state canvasses must be completed within a certain limit of time, but this does not mean that the work already done was invalidated or deprived of its probative force. Why should that work not be given effect? I am unable to see. It seems to me that in ruling otherwise both the trial court and this court have subordinated form to substance, and rejected evidence which our common sense tells us is the very best evidence.

The decision in the *Husting Case* and the decision in this case taken together mean, as it seems to me, that in every case of a closely contested election in Milwaukee county sec. 86 of the Statutes becomes a mere husk without the kernel, a beautiful promise, kept to the ear but broken to the hope.

So with regard to the differences between the tally sheets kept by the precinct election officers and the statements of re-

sults returned by them to the county clerk under the provisions of secs. 77 and 78 of the Statutes of 1913 (secs. 6.58 and 6.59, Stats. 1915).

By the provisions of ch. 581, Laws 1913 (now sec. 6.28, Stats. 1915), the tally sheets are made official documents to be certified by the election officers and returned to the county clerk as part of their statement of the result under the provisions of sec. 78, Stats. 1913 (sec. 6.59, Stats. 1915). Thus they become evidence, and when fair on their face and not impeached by extrinsic evidence (as is the case here) must, it seems to me, be considered more satisfactory evidence of the actual vote than the written statement afterwards made. It would not be correct to say that they would necessarily control the written statement. There might well be evidence on the face of the tally sheet which would stamp it as unreliable or extrinsic evidence which would have the same effect, but there is nothing of that kind here. The tally sheets in question are not impeached in any way; they contain the tallies evidently placed upon them carefully and methodically by the election inspector or clerk as the names of the candidates were called off from the ballots as they were being counted. It is to be noted that in the tally sheets from the fourth precinct of the Eighteenth ward not only are the tallies themselves 19 in number, but the sum is carried out in a column to the right as 19, while in the written statement on a separate sheet the number is stated as 9. To my mind it is much more likely that an error was made in transferring the totals to the statement than in recording the votes on the tally sheet as they were called off.

What the conclusion of the trial judge on this question was seems somewhat uncertain. There is but one finding which touches the question at all and that is the finding that the evidence received was "insufficient in fact and incompetent in law" to impeach the return of the county canvassers. So far as the tally sheets are concerned there can be no doubt of their competency, and in my judgment there is as little doubt

of their sufficiency. McCrary, Elections (4th ed.) §§ 505, 506; *State ex rel. Att'y Gen. v. Donnewirth,* 21 Ohio St. 216.

I have not discussed the question as to the admissibility of the ballots themselves. While I entertain grave doubt whether the ruling of the court excluding them was correct, I should not on this ground alone disagree with my brethren, but defer to the conclusion of the trial judge, who evidently thought that they had lost their probative value because it appeared that they had not been carefully guarded and might easily have been tampered with. I base my conclusions on the uncontradicted evidence in the case, which in my judgment shows a plurality of two votes for *Mr. Plehn.* If this *prima facie* showing could be met and overcome in any way, it was the business of the defendant to present the evidence which would accomplish that result, but this he did not do.

ESCHWEILER, J., took no part.

A motion for a rehearing was denied, with $25 costs, on October 3, 1916.