STATE EX REL. GRAVES, Appellant, vs. WIEGAND, Respondent.

*June 6—June 29, 1933.*

For the appellant there was a brief by *Eberlein & Larson,* and oral argument by *M. G. Eberlein* and *O. B. Strossenreuther,* all of Shawano.

For the respondent there was a brief by *Fischer & Brunner* of Shawano, and oral argument by *L. J. Brunner.*

FAIRCHILD, J. The question at the bottom of this controversy is one of evidence. The lawyerlike stipulation entered into by both sides settles the facts so as to leave for consideration only the proper application of correct rules of evidence. Counsel for appellant has in a very commendable manner cleared the case of all confusion arising from disputed facts by resting his case on the proposition that the statute prescribing the mode of the return and preservation of the ballots is not directory but mandatory; that before the ballots can be used as evidence to impeach the result declared by the board of canvassers, the statute must have been exactly complied with in the matter of the sealing and the return of the ballots. This, he insists, requires a ruling that "mere opportunity for manipulation or alteration of the ballots, even in the absence of allegations or proof of fraud, is sufficient to destroy their integrity and character as compe-

tent evidence." If the statute relating to the preservation of the ballots in these particulars is directory only and there has been a substantial compliance therewith, appellant's contention must fail.

The method of dealing with election returns is regulated by statutes which modify the rules of evidence ordinarily governing in particular instances. If the substantive law required the destruction of the ballots after the original count had been made, the certificate of the canvassing officials would be of a greater degree of solemnity and finality than where, as in this state, the legislature expressly provides for preservation and recounting of the ballots in the event of a contest.

The inspectors of election of a precinct are directed by statute, sec. 6.60 (3), to fold in two folds and to string closely upon a single piece of flexible wire all ballots which shall have been counted by them, unite the ends of such wire in a firm knot, seal it in such manner that it cannot be untied without breaking the seal, inclose the ballots so strung in a secure canvas covering, and securely tie and seal such covering with official wax impression seals so that it cannot be opened without breaking the seal, and then to return the ballots in such sealed canvas covering to the county clerk. That officer is carefully to preserve the ballots for sixty days and at the end of that time to destroy them by burning unless a contest of election shall be pending; then the ballots are not to be destroyed until such contest is finally determined. Sub. (4) of this same section provides:

"In all cases of contested elections the parties contesting the same shall have the right to have said ballots opened, and to have all errors of the inspectors in counting or refusing to count any ballot, corrected by the court or body trying such contest, but such ballots shall be opened only in open court or in open session of such body and in the presence of the officer having the custody thereof."

The statute by its terms lays upon the inspectors the duty of protecting the voters' ballots against change by taking steps reasonably calculated to keep the ballot in the form in which it was voted. This section is one of many regulating the conduct of elections, contained in title II of the Wisconsin Statutes, and the sections of that title are, according to sec. 5.01 (6), to be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions. There is also a modification of the mandatory terms of sec. 6.60 to be found in sec. 6.75, which provides that "the legality of such votes so appearing, failures to fully comply with the law respecting noticing or conducting the election or canvassing or returning the vote shall be disregarded."

The original statement of the canvassing board as evidence of the result of an election is temporarily sufficient, and, if unchallenged, is conclusive as to who the successful candidate for office is. But when challenged in recount proceedings the canvassers or the court will examine with the aid of the ballots into the fact in issue. The protection of the interests and rights of the voters is the chief concern to be served. As a general proposition this statement of the board of canvassers is "provisionally preferred testimony." 2 Wigmore, Evidence, § 1351. This statement is evidence with a presumption of correctness in its favor. When challenged the ballots in certain cases may be disclosed and counted. The presumption in favor of the statement or certificate of the canvassers can be rebutted. In case of a disagreement between the result given in the certificate and the result reached by a recount of ballots, the latter must prevail; for the voter's ballot, like any written instrument expressing an intention, is the best evidence of its contents. When the ballots themselves cannot be trusted because they have been tampered with or when by law they have been destroyed, the official

certificate may stand unimpeached. But so long as the ballots are identifiable as the vote of the electors they have a superior value as evidence. In the case before us there were failures by the election officials to comply in all particulars with the detailed requirements of the statute. This is unfortunate, but under the proof presented the irregularities do not amount to a destruction of the integrity of the ballots.

It is generally conceded that the ballots are the best evidence of the intention of the voters, that they must control as against all other evidence when it appears they are present, available for counting, and there exists no reasonable probability of their having been tampered with. In *Attorney General ex rel. Bashford v. Barstow,* 4 Wis. 567, it was said:

"The question is whether the canvass, or the election, establishes the right of a person to an office. It seems clear that it cannot be the former because by our constitution and laws it is expressly provided that an election by the qualified voters shall determine the question."

Ballots remaining in the form in which they were cast contain the expression of the will of the voters and should be consulted as the best evidence of the fact in issue. Of course when changed, or when there exists a reasonable probability that they have been changed, then to count the ballots would be to give control of the election to the one defiling the ballots and they should not be counted, but so long as their integrity is maintained they show the purposes and wishes of the voters. The rules of evidence applicable to this case under the statute may be stated as follows: A presumption exists in favor of the integrity of the ballot when the returns have been made according to the direction of the statute. If the officials have complied fully with the statutory directions and the bags containing the ballots are brought to the recount body or court in properly sealed condition, one objecting to the use of the ballots would have the

burden of showing interference and manipulation. When produced with the seals missing, the burden is upon the one seeking to use them to show a lack of reasonable probability of their having been interfered with.

Our attention is called to respectable authority in other states holding that statutes somewhat similar to our sec. 6.60 are mandatory. It was said in *Smith v. Board of Canvassers*, 220 Mich. 318, 189 N. W. 858: "We have no hesitancy in saying the statute is mandatory." See cases cited in note to sec. 1351, 2 Wigmore on Evidence (2d ed.).

In this state it has been the practice to resort to the ballots when the intent and act of the voters at an election was the question to be determined and when the ballots have actually and demonstrably been preserved in their integrity, even though the inspectors have failed in certain particulars. The result obtained by a careful recount of the ballots prevails over tabulations of the inspectors of election and canvassing boards. This general proposition has been considered by our court in several cases, beginning with *Attorney General ex rel. Bashford v. Barstow, supra*. Again, in *State ex rel. Schuetz v. Luy*, 103 Wis. 524, at p. 528, 79 N. W. 776, it was said:

"In a judicial controversy between individuals over the results of an election, it is the duty of the court to rectify any omissions or mistakes of the canvassing boards, and give effect to the real will of the voters, as in fact expressed through their ballots."

And in *State ex rel. Symmonds v. Barnett*, 182 Wis. 114, 195 N. W. 707, it was said:

"As a general rule a voter is not to be deprived of his constitutional right of suffrage through the failure of election officers to perform their duty, where the elector himself is not delinquent in the duty which the law imposes upon him."

Appellant urges that the case of *State ex rel. Plehn v. Widule*, 164 Wis. 3, 157 N. W. 769, is authority for his

contention that the statute is mandatory and unless strictly complied with in the matter of returning the ballots their integrity is destroyed. This case was here upon a state of facts which convinced the majority of the court, as it did the trial court, that there was direct evidence that the ballots had been tampered with before the trial of the action; that there was evidence strongly tending to show that the ballots had not been protected so as to preserve their integrity. And the court held that under the evidence there submitted the trial court's refusal to permit a recount of the ballots was proper. The rule consistently adhered to in other cases was not altered or affected by the decision in *State ex rel. Plehn v. Widule, supra,* although the opinion in that case contains language admittedly carrying the meaning appellant relies upon. In the last analysis that decision was based on the trial court's finding that the ballots themselves could not be trusted because they had been tampered with.

The duty of the canvassers is largely ministerial. They are to count the votes and make a statement of the result. Sec. 6.63 *et seq.,* Stats. Their powers are not judicial. There are expressly reserved to the contestants the rights and remedies affecting the title to office existing when the statutes were adopted. Sec. 6.66 (4). The board of county canvassers first make a statement of the votes and a succinct tabular exhibit in figures of the votes cast in the count for each office and person entering into the canvass embraced in such statement. This statement is *prima facie* evidence of the result of the election, but not evidentially conclusive. It is a determination the permanency of which depends on subsequent determinations and must give way before the final result arrived at by using as evidence the identifiable and unmanipulated ballots. With relation to the group of fourteen ballots originally counted as votes for the entire Democratic ticket which upon recount were credited to the candidate for governor, clearly the indication of the voter's

intention was manifested by placing his mark in the square opposite the name of Albert G. Schmedeman. This indicated an intention to vote for Governor Schmedeman for the position of governor and did not amount to a vote for any other candidate upon the ticket. We conclude that the ballots were correctly counted upon the recount and this properly resulted in reducing the number of votes formerly allowed to appellant.

It is conceded that upon the recount defendant had a majority of seven. The findings of the trial court are sustained by the evidence. The ballots being shown to be identifiable and in true form, we find no error, and are of the opinion that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.