THE STATE EX REL. SCHUETZ, Respondent, vs. LUY, Appellant.

*June 5 — June 22, 1899.*

*Elections: Defective ballots: Canvass of votes: Evidence.*

1. Under the provisions of the statutes (secs. 52, 57, Stats. 1898, and secs. 43, 49, ch. 288, Laws of 1893), in canvassing the vote cast at an election, ballots wherein, after placing a cross at the head of the column which included the names of defendant and relator, a cross was placed after the name of relator, and others that were so marked with a cross at the head of the column, from which the defendant's name had been erased, and that of the relator written in the space below, should be counted for the relator.

2. While there should be strict and careful supervision and preservation of defective ballots cast at an election in order to make them admissible in evidence, yet in the ultimate analysis it is only necessary that the court should be satisfied that the ballots offered in evidence are the identical ones cast at the election and are without change.

3. In judicial controversy between individuals over the results of an election, it is the duty of the court to rectify any omissions or mistakes of the canvassing boards, and give effect to the real will of the voters as in fact expressed through their ballots, and that will, and the terms of those ballots, like any other facts, are to be ascertained from evidence, and are subject to the same rules as any other evidentiary matter.

4. Since it is the duty of the canvassing officers to destroy all the ballots cast at an election as soon as counted, except where retained as defective, their contents, like any other written instrument, may be proved by oral evidence, especially if no objection thereto be interposed.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Relator and defendant were opposing candidates by party nomination at the spring election of 1898 for the office of town chairman of the town of Milwaukee. The defendant was seated, upon a canvass of the votes, by a majority of twenty-four. Upon the trial it was shown that the inspect-

ors at precinct No. 2 were, as alleged, all of the same political party with the defendant; that one of them misconducted himself in the manner indicated in the complaint; that the public were excluded from the booth when the votes were counted, and that, instead of obeying the statute with reference to the ballots after the same were counted, those thrown out as defective were not sealed up, but were simply tied together and put into the ballot box, where also were put the returns and all the other ballots cast at said election; that the ballot box, being locked, was then delivered to the clerk of the town, and remained duly locked in the town hall for a week or more after election; whereupon, on notification of dissatisfaction, the clerk removed the parcel of defective ballots and put them in his safe. Some evidence was offered to show the possibility of access to the town hall, and indicating some attempts upon the ballot box containing these ballots. The court, however, found that the thirty defective ballots had been preserved without interference, and were the identical ballots returned by said inspectors, and that the box containing the same had not in any manner been tampered with, and accordingly received said ballots in evidence. Of these thirty, twenty-five were counted by the court for relator; there having been a cross at the head of the column in which was defendant's name, and a separate cross against the name of relator. Witnesses also testified, and the court found, that two ballots were counted for neither relator nor defendant, where the cross had been placed at the head of the column containing defendant's name, but his name erased, and that of the relator written in the space below it. These two were counted for relator by the court. The result gave the relator 292 votes, against 290 for defendant; and judgment of ouster was entered against the defendant, and adjudging relator duly elected, and that he assume the office upon taking the oath.

For the appellant there were briefs by *Nath. Pereles &
Sons* and *H. K. Curtis*, attorneys, and *G. D. Goff*, of counsel,
and oral argument by *Mr. Goff*.  They contended, *inter alia*,
that if the ballots have been so carelessly cared for as to
offer opportunities for interested parties to tamper with or
alter them, unless all reasonable doubts as to their integrity
are removed by an affirmative showing, such ballots are not
entitled to be resorted to for the purpose of determining the
state of the vote. *Newton v. Newell*, 26 Minn. 529; *O'Gorman
v. Richter*, 31 Minn. 31; *Powell v. Holman*, 50 Ark. 85; *Peo-
ple ex rel. Dailey v. Livingston*, 79 N. Y. 290; *Hartman v.
Young*, 17 Oreg. 150; *Ex parte Brown*, 97 Cal. 83; *Ex parte
Arnold*, 128 Mo. 256; *Albert v. Twohig*, 35 Neb. 563; Mc-
Crary, Elections (4th ed.), § 471; *Hughes v. Holman*, 23 Oreg.
481; *Fenton v. Scott*, 17 Oreg. 189.  The election officers were
qualified to hold the election. , *Sargent v. Wilder*, 71 Me. 380;
*Trustees v. Garvey*, 80 Ky. 159; *Sprague v. Norway*, 31 Cal.
173; *People ex rel. Hartwick v. Avery*, 102 Mich. 572; *Adsit
v. Osmun*, 84 Mich. 420; *People ex rel. Fiske v. Devermann*,
83 Hun, 181; *State ex rel. Crawford v. Norris*, 37 Neb. 299;
*People v. Cook*, 8 N. Y. 67; *Taylor v. Taylor*, 10 Minn. 107;
*Pritchett v. People*, 6 Ill. 525; *St. Louis Co. Ct. v. Sparks*, 10
Mo. 117; *People v. Albertson*, 8 How. Pr. 363.  The provis-
ions of law defining the manner in which the voter shall
mark his ballot are mandatory.  McCrary, Elections (4th
ed.), §§ 720, 724; *Tebbe v. Smith*, 108 Cal. 101; *Taylor v.
Bleakley*, 55 Kan. 1; *Whittam v. Zahorik*, 91 Iowa, 93; *Par-
vin v. Wimberg*, 130 Ind. 561; *Att'y Gen. ex rel. Scott v. Glaser*,
102 Mich. 405; *Bechtel v. Albin*, 134 Ind. 193; *Lay v. Par-
sons*, 104 Cal. 661; *Parker v. Orr*, 158 Ill. 609.  The court
erred in permitting the introduction of oral testimony in
regard to ballots.  *Harris v. Whitcomb*, 4 Gray, 433; *Sinks
v. Reese*, 19 Ohio St. 306; *Murphy v. Battle*, 155 Ill. 182; *State
ex rel. Stoddard v. Bate*, 70 Wis. 409.  As to what constitutes
proper mark on a ballot: *Robertson v. Adamson*, 3 Sess. Cas.

(4th series), 978; *Haswell v. Stewart*, 1 Sess. Cas. (4th series), 925; *Sweeney v. Hjul*, 23 Nev. 409; *Dennis v. Caughlin*, 22 Nev. 447; *People ex rel. Pierce v. Parkhurst*, 24 Misc. (N. Y.), 442; *McMahon v. Polk*, 10 S. Dak. 296; *Rutlidge v. Crawford*, 91 Cal. 526; *Lauer v. Estes*, 120 Cal. 652; *Bechtel v. Albin*, 134 Ind. 193; *Houston v. Steele*, 98 Ky. 596; *Church v. Walker*, 10 S. Dak. 450; *Hawes v. Miller*, 56 Iowa, 395; *Calvert v. Whitmore*, 45 Kan. 99; *Gumm v. Hubbard*, 97 Mo. 311.

For the respondent there was a brief by *Toohey & Gilmore*, and oral argument by *John Toohey*.

DODGE, J.   While the gross irregularities and illegal acts characterizing the election and canvass of the votes at precinct No. 2, and the looseness in transmitting and preserving the defective ballots, render any conclusion unsatisfactory, if not doubtful, yet it is impossible to say that the findings of the court are antagonized by any clear preponderance of the evidence.   Those findings have been made after a careful trial, where the witnesses were subjected to the observation of the superior court, and other means of assurance were had which are not possible to us.   The ballots which that court has counted for the relator in reversal of the action of the canvassing officers, he is clearly entitled to under the statute.   They consist of twenty-five wherein the voter, after placing the cross at the head of the column which included defendant's name, had placed a cross against the name of the relator, and of two wherein, after marking the cross at the head of said column, the defendant's name had been erased, and relator's written below it.   Under the provisions of secs. 52, 57, Stats. 1898, and secs. 43, 49, ch. 288, Laws of 1893, all of these votes belonged to relator; and, being so counted, they result in a majority for him of two.

We concur in much said by appellant's counsel as to the necessity for strict and careful supervision and preservation

of defective ballots, in order to make them admissible in evidence; but, in the ultimate analysis, such general rules result only in requiring that the court shall be satisfied that the ballots offered in evidence are the identical ones cast at the election, and are without change. The identity and integrity of the so-called defective ballots received in evidence in this case have been found by the court upon evidence which certainly does not preponderate against that finding, and they therefore must be taken as the evidence of the intent of the voters who cast them. In a judicial controversy between individuals over the results of an election, it is the duty of the court to rectify any omissions or mistakes of the canvassing boards, and give effect to the real will of the voters, as in fact expressed through their ballots. *State ex rel. Spaulding v. Elwood,* 12 Wis. 551, 557; *State ex rel. Guernsey v. Meilike,* 81 Wis. 574, 577. And that will, and the terms of those ballots, are to be ascertained from the evidence, like any other facts, and subject to the same rules of evidence. The court below seems to have proceeded in accordance with that policy. True, the contents of two ballots was established by oral testimony, but no objection upon that ground was made, and it was not shown that the ballots themselves had existence at that time. Oral evidence is necessarily admissible for that purpose in most cases, since by the law it is the duty of the counting officers to destroy the ballots as soon as counted, except where retained as defective; and while their contents, like that of any other written instrument, could best be proved by the instruments themselves, if in existence, they may, in a proper case, be proved by oral evidence, especially if there be no objection made thereto. *State ex rel. Hawes v. Pierce,* 35 Wis. 93, 98; *State ex rel. Guernsey v. Meilike, supra; State ex rel. Cremer v. Steinborn,* 92 Wis. 605, 607.

While we prefer to rest our decision in this case, resulting, as it does, in an affirmance of the judgment of the court

below, upon the same grounds upon which that court pro-
ceeded; we cannot refrain from expressing the strongest
condemnation of the manner in which the election at pre-
cinct No. 2 was conducted. The utter disobedience of the
statute which requires that the three inspectors shall not be
of the same political party is most reprehensible. That
provision is of the gravest importance for the protection of
the rights of voters and candidates, and of purity in elec-
tions. This case offers an excellent illustration of the out-
rages upon those rights likely to result from disobedience.
Here, out of a total of thirty-two so-called ambiguous ballots
rejected by the inspectors, it appears that twenty-seven
should have been counted for the candidate of the party op-
posed to those who made up this illegal board of inspectors.
The inference of unfairness, if not fraud, is almost irresist-
ible, especially when the public were unlawfully excluded
from their right to observe the count, given by sec. 76,
Stats. 1898. Again, the conduct of the chairman of this
board of inspectors, made apparent by the evidence, in de-
voting himself almost throughout election day to parti-
san proselyting, and solicitation and influencing of voters,
should call for the prompt condemnation of all good citi-
zens. It is a commentary upon the laxity of our people
in defending their rights to free and secret suffrage under
the law that this man does not appear to have been called
to the bar of a criminal court to respond for such acts.
There is a strong tendency in the decisions of this and many
other courts to overlook irregularities, and to refrain from
depriving communities of the results of an election by rea-
son thereof. This tendency may doubtless tend towards
justice, if the irregularities are unconscious and without in-
tentional fraud; but, if such tenderness is likely to continue
the occurrence of such practices as are here presented, it
will be mistaken, for it will result in sustaining, as valid,
elections the result of which may be entirely opposite to the

will of the majority as it would have been expressed had the election been legally conducted,— a result certainly more outrageous than the entire disfranchisement of the community. That tendency in courts is predicated upon the charitable presumption of innocence of wrong intent in failures to comply with the somewhat technical and involved statutes governing elections; but, if it is to continue without serving more often as a shelter for fraud and subversion of the popular will, it can only be because wilful acts of disobedience of the law are promptly prosecuted and punished.

*By the Court.*— Judgment affirmed.