OLLMANN, Respondent, vs. KOWALEWSKI, Appellant.

*September 12—October 7, 1941.*

*Edmund J. Krzywkowski* and *Chester J. Niebler,* both of Milwaukee, for the appellant.

*Joseph F. Schoendorf* of Milwaukee, for the respondent.

FOWLER, J. As the result of an election in the city of Cudahy to the office of city treasurer the election inspectors reported that Ollmann received a plurality of eleven votes and that Kowalewski received the next highest number. Kowalewski duly demanded a recount before the board of canvassers as provided by sec. 6.66 (1), Stats. The board found that the parties each received the same number of votes. Ollmann then demanded a second recount under sec. 6.66 (1a) which was made. On the second recount the board found that Kowalewski received 787 and Ollmann 786 votes, and gave Kowalewski a certificate of election as provided by sec. 6.65. Ollmann appealed from the determination of the board of canvassers to the circuit court under sec. 6.66 (3).

The circuit court found that in the Second precinct of the First ward 314 ballots had been cast and counted by the board of canvassers, and that only 313 names were checked by the election clerks as voting. Sec. 6.57, Stats., provides that when the number of ballots exceeds the number of voters checked as voting the election inspectors shall draw out by chance ballots to the number of the excess and destroy as excessive the ballots withdrawn without ascertaining for whom they were cast. As this had not been done, the trial judge in the proceedings before the court went upon the supposition that what should have been done by the election inspectors should be done by him, and by chance withdrew one ballot. This ballot was read by the clerk and was for Kowalewski. The 313 ballots were included with the total ballots counted and the ballot for Kowalewski that was withdrawn was excluded from the count. This made the total vote of each party 786.

The action of the court in respect of the ballots returned from the Second precinct of the Third ward is also involved. All the ballots cast in this ward at the voting place the day of election were initialed by one clerk affixing his own initials and the initials of the other clerk to 283 ballots, and the other clerk affixed to the remaining ballots cast his own initials and

the initials of the clerk who initialed the 283 ballots. Sec. 6.36 (1), Stats., provides that each ballot clerk shall affix his initials to each ballot cast and no ballot not so initialed shall be counted. Three hundred five ballots initialed as above stated were cast at the voting precinct. Of these 49 were for Ollmann, 133 for Kowalewski, 50 for Candidate Dretzka, 60 for Candidate Lawler, and the rest blank or defective.

The court found that the total vote cast at the election was 2,831 of which 1,145 were cast for candidates other than the parties hereto, 787 for Kowalewski, 786 for Ollmann, and the remainder blank or defective. The court adjudged that the ballot for Kowalewski that was withdrawn by the judge should not be counted; that the result of the election was a tie between Kowalewski and Ollmann; that the certificate of election awarded to Kowalewski was void; and that the common council determine the election by casting lots in the presence of the council in such manner and at such time as the council should direct.

Both parties appeal. Kowalewski assigns as error the exclusion of the one withdrawn ballot that was for him, and claims that the court should have counted it for him. He also claims that even if excluded it should have been apportioned *pro rata* among all the candidates according to the number of their votes. If either contention is sustained, the determination of the court must be reversed unless the 305 ballots should have been excluded as defective. Ollmann assigns as error the counting of the 305 ballots initialed as above stated. If they are thrown out as illegal, Ollmann wins regardless of the exclusion of the one Kowalewski ballot cast in the other ward, as Kowalewski received 133 votes in that ward and Ollmann 49, and rejecting these votes would leave Ollmann's total 786, minus 49, 737, and Kowalewski with his one excluded ballot included, 787, minus 133, 654.

We consider that the 305 ballots were properly counted. They clearly expressed the will of the voters who cast them. It is true that sec. 6.36 (1), Stats., provides that the ballot

clerks shall "write their names or initials upon the back of each ballot," and sec. 6.41 declares that:

"Any person who shall knowingly deposit a ballot in the ballot box upon which ballot the names or initials of the ballot clerks do not appear shall be punished as provided in section 353.27, and in the canvass of the votes any ballot which is not indorsed by the signatures or autograph initials of such clerks shall be void, not counted, and be treated and preserved as a defective ballot."

Clearly no voter could be punished under sec. 353.27, Stats., for depositing one of the ballots initialed as above stated, for he would have no means of knowing that the ballots did not bear the "signatures or autograph initials" of the clerks, as the initials of the clerks were on the ballots, and there was nothing to indicate that they were not autographs. The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote. Any statute that purported to authorize refusal to count ballots cast under the instant circumstance would be unconstitutional. A statute purporting so to operate would be void, rather than the ballots. And the ballots not being void, should be counted notwithstanding the statute. Voting is a constitutional right, sec. 1, art. III, Const., and any statute that denies a qualified elector the right to vote is unconstitutional and void. It is true that sec. 6.41, Stats., is plainly enough mandatory in its terms, and if literally applied would invalidate the 305 votes. But if construing it as mandatory will make it unconstitutional, it must be held to be directory only in order to save the statute, and that is how we must construe it. A ballot legally cast cannot be rejected if it expresses the will of the voter. Sec. 5.01 (6) reads:

"This title [elections] shall be construed so as to give effect to the will of the electors, if that can be ascertained

from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

The section applies to all chapters of the statutes relating to elections. *State ex rel. Oaks v. Brown,* 211 Wis. 571, 249 N. W. 50; *Commonwealth Tel. Co. v. Public Service Comm.* 219 Wis. 607, 263 N. W. 665; *State ex rel. Pelishek v. Washburn,* 223 Wis. 595, 270 N. W. 541. This section of the statute was originally enacted in 1903. Secs. 6.41 and 6.36, Stats., were enacted in 1889. A later statute should be applied rather than an earlier so far as the terms of the two are irreconcilable. The validity of the 305 votes may be rested without further citation or argument on *State ex rel. Wood v. Baker,* 38 Wis. 71. It is there said, page 87, of failure of election inspectors to perform their statutory duty, and manifestly the same may be said of election clerks in respect of initialing ballots:

"And if failure or error in duty of the inspectors, of which voters have no notice in fact, could operate directly or indirectly to disfranchise voters at the election, we should encounter the same difficulty in sustaining the statute under the constitution. Nonfeasance or malfeasance of public officers could have no effect to impair a personal, vested, constitutional right. We see no such purpose in the registry law. Surely it would be a strange attempt to protect the elective franchise and preserve the purity of elections, to put it in the power of inspectors of election, by careless accident or corrupt design, to disfranchise constitutional voters."

And it is further said, page 89, the voters' constitutional right to vote "cannot be baffled by latent official failure or defect." The failure of the clerks each to personally autograph his signature on every ballot was plainly a "latent neglect or failure of duty." See also *State ex rel. Symmonds v. Barnett,* 182 Wis. 114, 195 N. W. 707; *State ex rel. Schuetz v. Luy,* 103 Wis. 524, 528, 79 N. W. 776; *State ex rel. Dithmar v. Bunnell,* 131 Wis. 198, 207, 110 N. W. 177.

We are of opinion that the circuit judge was in error in withdrawing a ballot and excluding it from the count. One purpose of sec. 6.57, Stats., in directing the inspectors to check the number of votes cast as shown by the clerk's lists is to reconcile the lists with the ballots if so may be done. It might be that on checking the lists some person whose name was on the registry list was not checked as voting whom the election officers personally knew to have voted. This appearing, the lists could be corrected and all ballots counted. No such opportunity exists when the discrepancy appears in the proceedings before the court. Also when the matter came before the court it necessarily appeared for whom the ballot withdrawn was cast, while when the matter is before the inspectors the ballot withdrawn is destroyed without this appearing. When the ballots came before the court we consider that they should have been considered regardless of the nonaction of the inspectors under sec. 6.57. We consider that before the Kowalewski ballot could be excluded from the count some evidence should have been adduced to support an inference of its invalidity. Fraud should not be presumed. To make the ballot illegal it must have been cast by someone not a legal voter or illegally cast by some legal voter casting two ballots. It must have been cast by some person not on the registration list, or not entitled to vote for some other reason. There were 500 registered voters in the precinct and only 314 votes cast. It is more likely that the election clerks made a mistake in checking someone who voted, than that any of the things stated happened. There was no finding by the circuit judge that the Kowalewski ballot was cast by one not on the registration list, nor is there a finding that anyone cast two votes. There was no evidence to warrant either such inference. One or the other of these things must have existed to render the ballot illegal. The ballot expressed the will of the person who voted it. To reject it without proof of illegality or fault on his part would disfranchise the voter. That proof sufficient to warrant an in-

ference of illegality should have been made to justify rejection of the ballot is supported by *State ex rel. Pelishek-v. Washburn* and *State ex rel. Dithmar v. Bunnell, supra.* They rule that although a candidate, by his own act of omission or commission, violates a statute and by the terms of the statute the violation bars him from the office he seeks, yet he cannot be so barred without proof that his conduct so influenced enough of those voting for him that but for that conduct they would have voted for another candidate in such number as to so reduce his vote as to elect such other candidate, else the voters are disfranchised. With greater reason should it be held that in order to reject ballots cast at an election good on their face they must be shown to have been illegally cast. There being no such proof in the instant case, the withdrawn ballot for Kowalewski should have been counted for him.

This makes it unnecessary to pass upon the further contention of counsel for Kowalewski that the withdrawn ballot if considered as to be rejected as an excess ballot should not have been deducted from his vote but should have been deducted from the votes of all the candidates in the ratio that the vote of each in the precinct bears to the total vote in the precinct for all the candidates. The total vote for all the candidates in the precinct was 314. Kowalewski received 59 of those votes and Ollmann 103. Kowalewski's total vote would thus be 787, minus 59/314ths, or 786 and 255/314ths. Ollmann's total vote would be 786, minus 103/314ths, or 785 and 211/314ths. This would give Kowalewski the larger vote by 1 and 44/314ths. This method of deduction is according to the general rule stated by McCrary, Elections (4th ed.), § 497. As by sec. 6.57, Stats., excessive ballots are to be withdrawn by lot and destroyed without being examined, they should not *all* be deducted from the candidate receiving the highest vote. Presumably if legal the uncounted and unidentified ballots would have been cast in the same proportion for the several candidates as the counted and identified ballots were cast.

Under a similar statute in Michigan it is stated in *People ex rel. Williams v. Cicott,* 16 Mich. 283, 323, in a concurring opinion by Justice COOLEY to the effect that where ballots are found in excess of the names on the poll lists, and the inspectors fail to draw them out as required, by the statutes of Michigan, they should on the trial of the cause be so apportioned that each candidate shall have deducted a share of them proportioned according to the whole number of votes in his favor; the probability being that the illegal and legal votes have been cast ratably for the several candidates.

In Illinois, under a like statute relating to rejection of excess ballots by the election officials before counting the votes, it was held that the method stated should be used, although there was only one excess ballot. *Boland v. LaSalle,* 370 Ill. 387, 19 N. E. (2d) 177. Proportionate reduction was made in *Hamilton v. Marshall,* 41 Wyo. 157, 282 Pac. 1058; *Berg v. Veit,* 136 Minn. 443, 162 N. W. 522; *Moore v. Sharp,* 98 Tenn. 491, 41 S. W. 587; *Russell v. McDowell,* 83 Cal. 70, 23 Pac. 183.

As the withdrawn vote should have been counted by the circuit court, the judgment of the circuit court must in all respects be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with direction to enter judgment declaring Stephen Kowalewski elected by one vote, and declaring valid the certificate of election issued to him by the canvassing board.