Patricia H. ROTH, Petitioner-Respondent,

v.

LAFARGE SCHOOL DISTRICT BOARD OF CANVASSERS,
Respondent-Respondent,

Gail J. MULLER, Third Party-Petitioner-Appellant.

Court of Appeals

*No. 01–0160. Submitted on briefs July 9, 2001.—Decided
August 16, 2001.*

2001 WI App 221

(Also reported in 634 N.W.2d 882.)

711

On behalf of the third-party-petitioner-appellant, the cause was submitted on the briefs of *George C. Wilbur*, LaFarge.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Christopher J. Blythe* of *Bauer Law Office*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *David L. Jenkins* of *Jenkins and Stittleburg*, Viroqua.

Before Dykman, Deininger and Lundsten, JJ.

¶ 1. DYKMAN, J. This is an appeal from an order limiting the issues that intervenor Gail J. Muller could raise in an election dispute brought by Patricia H. Roth, and from an order and a judgment declaring that a referendum had succeeded. Three issues are in dispute: (1) whether the trial court properly concluded that Muller could not assert her own claim because her motion to intervene came after the statutory deadline for appealing the board of canvassers' decision; (2) whether a ballot initialed by only one inspector was legally excluded by the board; and (3) whether another ballot that "look[ed] erased" was also properly disqualified from the recount.

714

¶ 2. We conclude that the trial court erred in refusing to allow Muller to assert her own claim. The deadline for filing a notice of appeal under WIS. STAT. § 9.01(b)(6) (1999–2000)[1] applies only to parties who are "aggrieved" by the recount. Muller opposed passage of the referendum and the result of the recount indicated that the referendum had failed. Therefore, Muller was not "aggrieved" and had no standing to bring her own appeal. Because the statutory deadline did not apply to Muller and because she satisfied each of the requirements to intervene as a matter of right, Muller should have been allowed to assert her own claim.

¶ 3. We also conclude that the trial court was correct in deciding that the ballot bearing the initials of only one inspector should have been included in the recount. The trial court did not rule on whether the "erased" ballot was properly excluded because this was the claim that Muller was prevented from asserting. Because that ballot is not part of the record, we cannot determine whether it should have been counted. We therefore remand to the trial court for a determination whether the board's conclusion that the intent of the voter could not be ascertained on that ballot is supported by substantial evidence.

## I. Background

¶ 4. The La Farge School District held a referendum on November 7, 2000, requesting approval from the voters for maintenance and remodeling work of the local school buildings. The election night returns reported that electors cast 392 votes in favor of the

---

[1] All references to the Wisconsin statutes are to the 1999–2000 version unless otherwise noted.

referendum and 392 votes against it. Under Wis. Stat. § 5.01(4)(d), a tie vote results in the referendum being defeated.

¶ 5. Roth, a resident and qualified voter in the La Farge School District, petitioned the La Farge School District Board of Canvassers for a recount under Wis. Stat. § 9.01, and the board held a recount on November 11. During the recount the board disqualified three "yes" votes as well as three "no" votes, resulting again in a tie.

¶ 6. On the following Friday, Roth filed a notice of appeal; she then filed a complaint in the Vernon County Circuit Court on November 24. She argued that one of the disqualified "yes" votes, which the board had disqualified because only one inspector (rather than two) had initialed it, should have been counted according to the statutes on recount procedure. The trial court ordered the board to respond by December 8, and scheduled a hearing for December 18.

¶ 7. Muller filed a motion to intervene on December 6. She claimed that, as a resident and qualified voter of the district, she had an interest in the outcome of the referendum, that her ability to protect that interest would be harmed if she could not intervene, and that the existing parties did not adequately represent her interest. In her complaint, Muller sought to argue both that the "yes" vote at issue was properly disqualified and also that one of the three disqualified "no" votes should have been counted.

¶ 8. The trial court granted Muller's motion to intervene, but only for the purpose of opposing Roth's complaint; Muller was not allowed to challenge the board's decision to exclude the "no" vote. After a hearing, the trial court concluded that the board had misinterpreted Wis. Stat. § 9.01 when it disqualified a "yes"

716

vote for having only one inspector's initials on it. Accordingly, the trial court ordered the board to include the ballot in the total so that the revised returns would reflect that the referendum passed by one vote. Muller appeals.

## II. Analysis

### A. Motion to Intervene

¶ 9. The parties do not dispute that the trial court was correct in allowing Muller to intervene for the purpose of challenging the inclusion of the "yes" vote. They do dispute, however, whether Muller should have been allowed to intervene in order to argue that the "no" vote had been improperly excluded. While both Roth and the board agree that the trial court correctly ruled that Muller could not raise "new issues," Muller asserts that the court erred because she was entitled to intervene on both issues as a matter of right.

¶ 10. Whether Muller is permitted to intervene as a matter of right is an issue of law that we review de novo. *See Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 743, 601 N.W.2d 301 (Ct. App. 1999). The supreme court recently set forth the requirements for intervention as a matter of right under WIS. STAT. § 803.09(1): (1) the motion to intervene must be timely; (2) the movant must claim an interest in the subject of the action; (3) the outcome may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the existing parties do not adequately represent the movant's interest. *City of Madison v. ERC*, 2000 WI 39, ¶ 11, 234 Wis. 2d 550, 610 N.W.2d 94.

¶ 11. Roth and the board do not seriously dispute that Muller has satisfied requirements (2), (3), and (4).

717

As an elector in the referendum, Muller has an interest in the outcome of the suit that is recognized by WIS. STAT. § 9.01(6), and, obviously, Muller's ability to protect that interest will be impeded if she cannot intervene because she will otherwise have no opportunity to assert her claims. *See* WIS. STAT. § 9.01(11); *State ex rel. Shroble v. Pruesner*, 185 Wis. 2d 102, 110–12, 517 N.W.2d 169 (1994) (holding that § 9.01 is the exclusive remedy for challenging mistakes made during the canvassing process). Also, neither Roth nor the board can adequately represent Muller's interest. Of the three parties, only Muller wishes to assert that one of the "no" votes was improperly disqualified. Even with regard to the excluded "yes" vote at issue, both the board and Roth now agree it should have been counted, leaving only Muller to dispute this.

¶ 12. It is the requirement of timeliness that Roth and the board claim Muller has not satisfied. They point to WIS. STAT. § 9.01(6), which requires appeals of the recount be made to the circuit court "within 5 business days after completion of the recount determination." Because the recount was completed on November 11, 2000, and Muller did not file her motion to intervene until December 6, 2000, Roth and the board assert that Muller's motion was untimely.

¶ 13. We disagree that Muller's failure to file her own appeal with the circuit court within five business days of the recount precluded her from intervening later. First, the supreme court has rejected the view that intervenors are necessarily subject to the same deadlines as the original parties. *City of Madison*, 2000 WI 39 at ¶ 10 (holding that failure to intervene within the statutory time period to appeal does not make motion untimely). More important, Muller cannot be

barred by the statutory deadline because the statute did not apply to her. WISCONSIN STAT. § 9.01(6) (emphasis added) requires only that "any elector ... *aggrieved* by the recount" appeal to the circuit court within five business days. We generally understand a person to be "aggrieved" when he or she is directly injured. *Auer Park Corp., Inc., v. Derynda*, 230 Wis. 2d 317, 320, 601 N.W.2d 841 (Ct. App. 1999); *Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 345, 501 N.W.2d 465 (Ct. App. 1993).

¶ 14. In this case, Muller was not directly injured by the recount because the result was in her favor. The recount ended in another tie, which under WIS. STAT. § 5.01(4)(d) means that the referendum failed. An individual cannot claim to be aggrieved when his or her position is successful. *Cf. State Public Intervenor v. DNR*, 184 Wis. 2d 407, 420, 515 N.W.2d 897 (1994) (holding that public intervenor was not aggrieved by judgment when he was the prevailing party). Because Muller was not aggrieved by the recount, she would have had no standing under WIS. STAT. § 9.01 to challenge the result. Had Muller attempted to bring her own appeal, the statute would have required the trial court to dismiss her complaint.

¶ 15. Having determined that Muller was not aggrieved, we cannot conclude that her motion to intervene is untimely as a result of her failure to appeal the board of canvasser's decision within five days. If we were to do so, individuals such as Muller would be denied any opportunity to obtain relief. They would both lack standing to initially challenge the recount and be denied an opportunity to later intervene.[2]

---

[2] Both respondents argue that Muller should have preserved her right to participate in the action by filing a "notice of

¶ 16. We are therefore left with a situation in which the legislature has provided a statutory deadline for those aggrieved by the recount to appeal but not for those who were satisfied with the result but want to later intervene. The absence of a specific deadline is not a problem, however, because trial courts may use the timeliness requirement of WIS. STAT. § 803.09 to prevent individuals from bringing tardy motions to intervene. *See Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 471, 516 N.W.2d 357 (1994) (holding that question of timeliness of motion to intervene is left to the discretion of the trial court). Although there is no "precise formula" for determining whether a motion to intervene is timely, the supreme court has stated that the "critical factor is whether in view of all the circumstances the proposed intervenor acted promptly." *State*

---

appearance" with the board. In support, they cite to one sentence in WIS. STAT. § 9.01(b)(6): "The appeal shall commence by serving a written notice of appeal on the other candidates and persons who filed a written notice of appearance before each board whose decision is appealed."

Roth and the board argue that this provision required Muller to file a written notice of appearance or forever forfeit her right to be a party in the appeal to the circuit court. The language of the statute, however, does not support this assertion. The provision is *not* a requirement for potentially interested parties but rather for the elector who is appealing the board's decision to the circuit court. Nowhere does the statute suggest that a failure to file a written notice of appearance will later preclude an elector from asserting a claim. If it did, Roth's own claim would be placed in jeopardy as there is no indication in the record that she filed a written notice of appearance either. In short, we do not view the cited provision of WIS. STAT. § 9.01(b)(6) as being relevant in deciding whether Muller has a right to intervene.

*ex rel. Bilder v. Township of Delevan*, 112 Wis. 2d 539, 550, 334 N.W.2d 252 (1982). In the context of election disputes, in which the interest in a swift resolution is significantly heightened, the meaning of "prompt" would necessarily be more demanding than in other settings.

¶ 17. In deciding whether a motion to intervene was brought in a timely manner, courts in Wisconsin have looked at a number of factors, including: (1) when the proposed intervenor discovered his or her interest was at risk; (2) how far litigation has proceeded; and (3) the extent to which the other parties would be prejudiced by the addition of a new party. *See, e.g., Armada*, 183 Wis. 2d at 472 (1994) (motion was timely when filed prior to commencement of first hearing on mandamus action); *C.L. v. Edson*, 140 Wis. 2d 168, 178–80, 409 N.W.2d 417 (Ct. App. 1987) (motion was timely when filed as soon as movant learned its interest was implicated and when existing parties would not be prejudiced); *State ex rel. Jones v. Gerhardstein*, 135 Wis. 2d 161, 168–69, 400 N.W.2d 1 (Ct. App. 1986) (denial of motion as untimely not a misuse of discretion when action had already reached a "critical stage"), *aff'd,* 141 Wis. 2d 710, 416 N.W.2d 883 (1987); *Bilder*, 112 Wis. 2d at 550–51 (motion was timely when brought nine days after action was filed, trial court had not yet approved settlement between existing parties, and parties were not prejudiced).

¶ 18. Muller filed her motion to intervene and complaint on December 6, 2000, less than two weeks after Roth filed her complaint with the Vernon County Circuit Court. No proceedings on the merits had yet taken place. The board did not file its answer until December 8, 2000, and no hearing was scheduled until

December 18, 2000. Finally, there is no indication in the record that Muller's claim would have unduly delayed the action or prejudiced the parties. Like Roth, Muller challenged the board's decision to exclude one vote. The additional time to decide Muller's claim would have been minimal.

¶ 19. The trial court did not consider any of these factors, but rather concluded that WIS. STAT. § 9.01(6) required Muller to file a notice of appeal within five business days after the recount. An erroneous exercise of discretion will result if our review of the record indicates that the trial court applied the wrong legal standard. *Connor v. Connor*, 2001 WI 49, ¶ 18, 243 Wis. 2d 279, 627 N.W.2d 182. Because the trial court applied the wrong legal standard and the facts of record do not support its decision, we conclude that the trial court exercised its discretion erroneously in deciding that Muller's motion to intervene was untimely.

¶ 20. Respondents also claim, however, that even if Muller's motion to intervene cannot be denied as untimely, the trial court still acted properly in limiting the issues that Muller could raise to those contained in Roth's complaint. Citing *Washington Elec. Co-op., Inc. v. Massachusetts. Mun. Wholesale Elec.*, 922 F.2d 92 (2nd Cir. 1990), the board argues that a trial court has the authority to limit the issues an intervenor may raise to those in the initial pleadings. The board is correct that, because WIS. STAT. § 803.09 is based upon FED. R. CIV. PRO. 24, we may look for guidance at case law and commentary regarding motions to intervene in federal court. *Bilder*, 112 Wis. 2d at 547. However, the holding in *Washington Electric* is not uniformly followed. There are just as many federal courts holding that intervenors

may assert new claims as there are holding that they cannot. *Compare Washington Elec.*, 922 F.2d at 97, *with Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir. 1993) ("[W]here the intervenor claims an interest adverse to both the plaintiff and defendant he or she is entitled to have the issues raised thereby tried and determined"); *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir 1985) (holding that intervenor becomes a "full participant in the law suit"); *United States v. Exxon Corp.*, 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985) (holding that Rule 24(a)(2) [intervention as a matter of right] permits only "housekeeping" or efficiency limitations). Furthermore, although there is no Wisconsin case law addressing the right of intervenors to raise new issues, we have stated previously that "[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Kohler Co. v. Sogen Int'l Fund, Inc.*, 2000 WI App 60, ¶ 12, 233 Wis. 2d 592, 608 N.W.2d 746. If treated as an original defendant, there is no question that Muller would be allowed to raise issues beyond those in Roth's complaint.

¶ 21. Furthermore, the reason for limiting an intervenor's claim is that unfairness would result from allowing an intervenor to assert a time consuming claim unrelated to the existing parties' pleadings. *See, e.g., Northwest Airlines, Inc. v. International Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 323 F. Supp. 107 (D. Minn. 1970). These concerns are not implicated in the present situation. First, although Muller seeks to raise a new issue, her claim arises from the same election and the same referendum as Roth's claim. We therefore do not view her claim as being unrelated. Second, as we have already noted, Muller's claim would not have unduly delayed the proceedings.

¶ 22. We also note that concern for the existing parties cannot be the only interest considered in an action such as this one. The result of this referendum does not affect just the parties in this suit, but has implications for the entire community. Allowing Roth alone to control the scope of litigation could improperly skew the result of the election in one direction and subvert the will of the electorate. Because giving effect to the will of the electorate is the overarching policy behind the election statutes, *see* WIS. STAT. § 5.01, we do not believe the legislature would deny those individuals whose position prevailed on the recount from pursuing *any* avenue to sustain the recount results on judicial review. We therefore conclude that the trial court erred in barring Muller from challenging the exclusion of the "no" vote.

¶ 23. Roth insists that allowing Muller to intervene and challenge the excluded "no" vote in this case will "open the door to adding new parties and raising additional issues *ad nauseam*." We disagree.

¶ 24. First, in elections for office, WIS. STAT. § 9.01(b)(6) recognizes only the right of candidates in challenging the recount, and each candidate is automatically made a party to the circuit court appeal. The only person entitled to raise new issues not asserted in the initial pleadings would be the candidate who was not "aggrieved" by the recount, i.e., the candidate who won the election according to the recount results. Second, even in referendums, where "any elector" has the right to challenge a recount, the number of parties who will have the right to intervene will generally be quite small. Only electors not aggrieved by the recount would be able to satisfy the timeliness requirement of WIS. STAT. § 803.09(1). That group is still fur-

ther limited by the fourth requirement, namely, that existing parties cannot adequately represent the movant's interests. If there is already a party in the case making the same claim a proposed intervenor wishes to assert, the trial court would be justified in denying the motion to intervene unless the existing parties were not adequately representing the claim. Finally, we note that trial courts have discretion to deny a motion to intervene as untimely if the action has already reached a "critical stage." *Jones,* 135 Wis. 2d at 168.

■■■

¶ 25. In our view, allowing electors whose position prevailed on the recount to intervene in a timely manner will not open the floodgates for new parties and claims. Rather, a rule requiring candidates and electors who are satisfied with the result of the recount to appeal the board's decision *just in case* someone else *might* appeal the decision would only encourage unnecessary litigation.

## B. Excluded Ballots

### 1. Standard of Review

■■■

¶ 26. WISCONSIN STAT. § 9.01(8) provides the standard of review for circuit courts reviewing the decision of the board. With regard to questions of law, § 9.01 provides that "[t]he court shall set aside or modify the determination if it finds that the board of canvassers ... has erroneously interpreted a provision of law and a correct interpretation compels a particular action." With regard to questions of fact, the statute provides that "the court may not substitute its judgment for that of the board of canvassers ... as to the weight of the

evidence on any disputed finding of fact." § 9.01(8). In this case, because there are no disputed facts and the trial court based its decision on the conclusion that the board had erroneously interpreted Wis. Stat. § 9.01(1)(b)4, we review its decision de novo. *See Matter of Hayden*, 105 Wis. 2d 468, 484, 313 N.W.2d 869 (Ct. App. 1981).

2. Excluded "Yes" Vote

¶ 27. Wisconsin Stat. § 7.37(4) provides that "2 inspectors . . . shall write their initials on the back of each ballot." Only one inspector initialed the "yes" vote that is in dispute. In determining whether the ballot was therefore properly excluded, we must decide whether the provision is directory or mandatory. Whereas noncompliance with a mandatory provision renders a ballot void, failure to comply with a directory provision will not invalidate the vote so long as there is "substantial compliance" with the statute. *See Lanser v. Koconis*, 62 Wis. 2d 86, 90–91, 214 N.W.2d 425 (1974). "A statute which merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election should be construed as directory." *Hayden*, 105 Wis. 2d at 483 (internal quotations omitted). We have "consistently sought to preserve the will of the electors by construing election provisions as directory if there has been substantial compliance with their terms." *McNally v. Tollander*, 100 Wis. 2d 490, 497, 302 N.W.2d 440 (1981).

¶ 28. There is nothing in Wis. Stat. § 7.37(4) suggesting that initials of two inspectors are "essential to the validity of the election." Furthermore, the supreme court has already decided that a ballot should be

counted when it was initialed by only one clerk but a statute required that it be initialed by two. *See Ollmann v. Kowalewski*, 238 Wis. 574, 300 N.W. 183 (1941). In *Ollmann*, a clerk had signed both his and another clerk's initials on 305 ballots, even though a statute required that each clerk initial the ballots individually.[3] *Id.* at 576–77. The court acknowledged that the statute "if literally applied would invalidate the 305 votes." *Id.* at 578. In holding that all 305 ballots must be counted, however, the court stated: "A ballot legally cast cannot be rejected if it expresses the will of the voter." *Id.*

¶ 29. Muller acknowledges *Ollmann*, but she argues that it is not controlling. Instead, she refers us to Wis. Stat. § 7.50(2), enacted after *Ollmann*, which states:

> All ballots cast at an election which bear the initials of 2 inspectors shall be counted for the person or referendum question for whom or for which they were intended, so far as the electors' intent can be ascertained from the ballots notwithstanding informality or failure to fully comply with other provisions of chs. 5 to 12.

Muller asserts that *this* provision is mandatory, and that because the "yes" vote in dispute contained the initials of one rather than two inspectors, he board was correct in deciding not to count it.

¶ 30. Although Muller concedes that Wisconsin courts have been reluctant to exclude votes from being

---

[3] The statute at issue was the now-repealed Wis. Stat. § 6.36(1) (1939–40), which provided in part:

> The ballot clerks shall only serve on election day. It shall be their duty to take charge of the official ballots, write their names or initials upon the back of each ballot under the printed indorsement thereon, fold it in proper manner to be deposited, and deliver to each voter as he enters the booth one ballot duly folded and indorsed.

counted when the intent of the voter is clear and the defect of a ballot is only technical, she contends that this is true only where the voter was not at fault. In this case, pointing to WIS. STAT. §§ 6.80(2)(d)[4] and 5.54[5] (also enacted after *Ollmann*), Muller argues that the voter was at fault because the election statutes and the ballot itself gave notice to the voter that his or her ballot might not be counted if it did not contain two signatures.

¶ 31. We disagree that WIS. STAT. § 7.50(2) mandates the board to exclude votes that contain the initial of only one inspector. The statute does not require that the board "shall not" count ballots with the initials of only one inspector. Moreover, when § 7.50(2) is read in conjunction with WIS. STAT. §§ 7.51(2)(c)[6] and

---

[4] WISCONSIN STAT. § 6.80(2)(d) provides:

> If an elector receives a ballot which is not initialed by 2 inspectors, or is defective in any other way, the elector shall return it to the inspectors. If the initials are missing, the inspectors shall supply the missing initials. If the ballot is defective, they shall destroy it and issue another ballot to the elector.

[5] WISCONSIN STAT. § 5.54 provides:

> Every ballot, except a ballot label or voting machine ballot, shall bear substantially the following information on the face: "NOTICE TO ELECTORS: This ballot may be invalid unless initialed by 2 election inspectors. If cast as an absentee ballot, the ballot must bear the initials of the municipal clerk or deputy clerk."

[6] WISCONSIN STAT. § 7.51(2)(c) provides:

> Whenever the number of ballots exceeds the number of voting electors as indicated on the poll or registration list, the inspectors shall place all ballots face up to check for blank ballots. In this paragraph, "blank ballot" means a ballot on which no votes are cast for any office or question. The inspectors shall mark, lay aside and preserve any blank ballots. If the number of ballots still exceeds

728

## 9.01(1)(b)4,[7] it becomes clear that the board misinter-

the number of voting electors, the inspectors shall place all ballots
face down and proceed to check for the initials. The inspectors
shall mark, lay aside and preserve any ballot not bearing the
initials of 2 inspectors or any absentee ballot not bearing the
initials of the municipal clerk. During the count the inspectors
shall count those ballots cast by challenged electors the same as
the other ballots.

[7] WISCONSIN STAT. § 9.01(1)(b)4 provides:

When the container or bag has been checked, it shall be
opened and the contents removed. The board of canvassers shall,
without examination other than is necessary to determine that
each is a single ballot, count the number of ballots therein,
excluding ballots removed under s. 7.51 (2) (e). Then, for each
opened absentee ballot envelope that was laid aside as defective
under subd. 2., the board of canvassers shall, without inspection,
randomly draw one absentee ballot from the container or bag. In
differentiating absentee ballots from other ballots, the board of
canvassers shall presume that a ballot initialed only by the
municipal clerk, the executive director of the board of election
commissioners or a deputy clerk or secretary is an absentee ballot.
If there are more defective absentee ballot envelopes than there
are probable absentee ballots, all of the probable absentee ballots
shall be removed from the container or bag. Additional ballots
shall be removed only if the number of remaining ballots still
exceeds the number of voting electors recorded under subd. 1.,
reduced by the number of defective envelopes set aside under subd.
2. All ballots removed shall not be counted, but shall be marked as
to the reason for their removal, set aside and carefully preserved.
If the number of ballots still exceeds the number of voters, the
board of canvassers shall place all ballots face up to check for blank
ballots. Any blank ballots shall be so marked, set aside and
carefully preserved. If the number of ballots still exceeds the
number of voters reduced by the number of defective envelopes set
aside under subd. 2., the board of canvassers shall place all ballots
face down to check the initials. Any ballot not properly initialed by
2 inspectors or any absentee ballot not properly initialed by the
municipal clerk, the executive director of the board of election
commissioners or a deputy clerk or secretary shall be temporarily
set aside and the board of canvassers shall, without inspection,
randomly draw from these ballots as many as are necessary to

729

preted these provisions when it excluded the vote for having the initials of only one inspector. *See Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996) (holding that statutes relating to the same subject matter should be construed together and harmonized).

¶ 32. WISCONSIN STAT. § 7.51(2) describes the procedure that the board must follow when tallying votes after the polls close on election night. Paragraph (c) provides that the board "shall mark, lay aside and preserve" ballots not bearing the initials of two inspectors. This provision only applies, however, *if* "the number of ballots exceeds the number of voting electors as indicated on the poll or registration list." *Id.* Similarly, WIS. STAT. § 9.01(1)(b)4 addresses the procedure for excluding votes during the recount. It provides that "[a]ny ballot not properly initialed by 2 inspectors . . . shall be temporarily set aside" *if* "the number of ballots still exceeds the number of voters" after defective absentee and blank ballots have been removed. *Id.* Even then, the board may only exclude the number of ballots "necessary to reduce the number of ballots to equal the number of voters." *Id.*

¶ 33. There is no indication in the record, nor do either of the respondents allege, that the number of ballots in this referendum exceeded the number of

reduce the number of ballots to equal the number of voters. Any ballots removed for lack of initials shall not be counted but shall be marked, set aside and carefully preserved. If the number of ballots still exceeds the number of voters reduced by the number of defective envelopes set aside under subd. 2., the remaining ballots shall be returned to the container or bag and the board of canvassers shall draw a number of ballots equal to the excess number of ballots by chance and without inspection from the container or bag. These ballots shall not be counted but shall be marked as having been removed by the canvassers on recount due to an excess number of ballots, set aside and carefully preserved.

voters at any stage of the initial tallying or the recount. Therefore, under WIS. STAT. § 9.01(1)(b)4, the board improperly excluded the "yes" vote for failing to bear the initials of two inspectors. WISCONSIN STAT. §§ 5.54, 6.80(2)(d), and 7.50(2) do not suggest otherwise. Sections 5.54 and 6.80(2)(d) properly warn voters that there are circumstances (not present here) under which their vote could be excluded if their ballots are not properly initialed, while § 7.50(2) simply guarantees voters who do use properly initialed ballots that their votes will be counted. Although Muller insists that strictly requiring the initials of two inspectors is essential to protect against fraud, the legislature appears to disagree. Sections 7.51(2)(c) and 9.01(1)(b)4 create a mechanism by which fraud will be assumed only when the number of ballots and electors are unequal. Because no fraud has been alleged in this case, there is no reason to invalidate the will of one elector because of a technical defect.

¶ 34. In sum, we conclude that WIS. STAT. § 7.37(4) should be interpreted as directory when the number of votes is equal to the number of electors. There was substantial compliance in this instance. We therefore agree with the trial court that this vote should not have been excluded.[8]

---

[8] Because we conclude that WIS. STAT. § 9.01(1)(b)4 prohibited the board from excluding the "yes" vote, we need not consider whether a voter's failure to follow directions on a ballot would justify an abrogation of that citizen's right to vote in other instances where the ballot has a technical defect but the intent of the voter is clear.

### 3. Excluded "No" Vote

¶ 35. Muller contends that one "no" vote was improperly disqualified by the board during the recount. Because Muller was not allowed to intervene for the purpose of challenging that ballot, however, it is not part of the record. According to the recount minutes, the vote was excluded because it "look[ed] erased" and three canvassers could not "determine with reasonable certainty what was intended."

¶ 36. There is no statutory provision specifically addressing this issue.[9] WIS. STAT. § 7.50(2)(b) provides that "[a] ballot cast without any marks . . . may not be counted," while WIS. STAT. § 7.50(2)(c) states that a vote should be counted "[i]f an elector marks a ballot with a cross (X), or any other marks, as |, A, V, O, /, √, +, indicating an intent to vote for that candidate, it is a vote for the candidate whose name it is opposite." The board determined that the intent of the voter could not be determined and therefore excluded the vote. Because the board is the trier of fact, its findings must be upheld if they are supported by substantial evidence. WIS.

---

[9] We disagree with Muller's contention that WIS. STAT. § 7.50(2)(cm) applies here. That statute provides:

> Any apparent erasure of a mark next to the name of a candidate may not be counted as a vote for that candidate if the elector makes another mark next to the name of one or more different candidates for the same office and counting of the mark would result in an excess number of votes cast for the office.

This provision only directs the board *not* to count an erasure as a vote when the elector has made another mark indicating his or her intent to vote for another candidate.

STAT. § 9.01(8); *DeBroux v. Bd. of Canvassers for the City of Appleton*, 206 Wis. 2d 321, 331, 557 N.W.2d 423 (Ct. App. 1996).

¶ 37. This vote is crucial in determining whether the referendum succeeds or fails. If it is not counted, the referendum will pass by a margin of one vote. If it is counted, there will again be an equal number of votes in favor of and against the referendum, resulting in the referendum's failure. We must therefore remand this case to the trial court for a determination regarding the intent of the voter of the excluded "no" vote.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.