GRADINJAN, Respondent, v. BOHO, Appellant.

*January 10—February 1, 1966.*

For the appellant there were briefs by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye*.

For the respondent there was a brief by *Nikolay, Jensen & Scott* of Colby, and oral argument by *John J. Nikolay*.

BEILFUSS, J.  The issues presented in this appeal are:

1. Did the respondent, Gradinjan, properly and timely appeal to the circuit court?

2. Were the three questioned ballots absentee ballots?

3. Is the provision of sec. 11.62, Stats., that absentee ballots not containing the name or initials of the issuing municipal clerk shall not be accepted or counted mandatory rather than directory?

Sec. 6.66 (3), Stats., provides:

"Within 5 days after the recount determination of said board, any candidate, or any elector who voted upon such constitutional amendment or proposition, as the case may be, aggrieved thereby may appeal therefrom to the circuit court of said county, by serving a notice in writing to that effect upon such other candidates or persons who filed written notices of appearances with said board. Such notice shall be filed with the clerk of the circuit court, together with an undertaking by the appellant, with surety and in an amount to be approved by the clerk of said court or the judge thereof, conditioned for the payment of all costs taxed against said appellant. The circuit judge shall forthwith issue an order directing the clerk of said county, or of said city, town or village or the secretary of the board of election commissioners, to transmit to the clerk of said court forthwith all ballots, papers and records affecting such appeal and fixing a time and place for hearing thereon, in open court or at chambers, or before a referee, not later than 5 days from the making of such order. Such order shall be served upon the county clerk, or the city, town or village clerk, or secretary of the board of election commissioners, as the case may be, and all such other candidates or persons who have appeared before said board. A reference may be ordered upon any or all questions. At the time and place so fixed the matter shall be summarily heard and determined and the costs taxed as in other civil actions."

The election was on April 6, 1965, and the board of canvassers' certificate after recount was dated April 13, 1965.

The brief filed on behalf of the appellant Boho asserts that "[n]o papers or process of any kind were filed with the clerk of court until April 19, 1965 when only the court's order of April 16 was filed, *but no notice of appeal,* or any averment of error, when even now remain apparently unfiled."

An examination of the record on appeal does not bear out these assertions. The record pages one through four reveal that the notice of appeal and proof of service of such notice on Boho and his attorney were dated and filed in the office of the clerk of circuit court on April 16, 1965. The record further reveals the order for hearing is dated April 16th and filed April 19th, and the undertaking for costs is dated April 16th and filed April 19th.

We agree with the trial court wherein it stated:

"The respondent-contestee, Joseph Boho, has moved to dismiss this proceeding because of an alleged failure to commence it within the time allowed by law and for a failure to comply with filing requirements. The governing statute is Sec. 6.66 (3), Wis. Stats. Such statute requires only that, as to timeliness, a notice of appeal shall be served upon 'such other candidates or persons who filed written notices of appearance with said board' within five days after the determination of the Board of Canvassers. This was done. The statute further provides that the notice and an undertaking be filed with the Clerk of Circuit Court. No time is expressed within which such filing must be done. The timely filing of a petition and the other provisions of statute to which counsel refers have to do with applications for a recount addressed to the Board of Canvassers and have no application to a review by this court. The motion to dismiss is denied."

At the trial there was a question as to whether the three questioned ballots were in fact absentee ballots. It is undisputed that the ballots in question do not have upon them at any place the initials or the name of either the ballot clerks or the town clerk and that these ballots

do have a very faintly visible imprint of the seal of the town clerk.

Counsel for Boho contends that the town clerk only assumed that the questioned ballots were absentee ballots and that this evidence is incompetent and insufficient to support a finding that they are absentee ballots.

Again the record does not bear out this factual contention.

At the trial Mr. Joe Bonkowski, the town clerk, testified as follows:

"By Mr. Bader:
"*Q.* Mr. Bonkowski, did you make any determination, did you inspect these ballots on the date of April 9th? *A.* I didn't handle the ballots on that day, just glanced over them on the table. All I did was check on the tally sheet.

"*Q.* When the fact was raised three of these ballots had no signature on these ballots, by yourself, you realized that didn't you when you saw the ballot your signature was lacking? *A.* Yes.

"*Q.* Why did you feel then that it was your signature that should have been on the ballots instead of the initials of the two ballot clerks? *A.* Well, these absentee ballots are sent out or given out—

"*Q.* You assume that these are absentee ballots, is that correct? *A.* Yes.

"Mr. Kaye: I think he is making an assumption.

"The Court: You assumed these were absentee ballots. You don't know whether they are or not, do you?

"*A.* Those are absentee ballots, I am positive.

"The Court: How do you know?

"*A.* On the other ballots, besides these three, there is a seal on there and there are no seals on there whatsoever. I put the town seal on there.

"By Mr. Bader:
"*Q.* You are supposed to put the town seal on there? *A.* You are supposed to put the name on them when they issue the ballot, which wasn't done intentionally.

"Mr. Bader: I have no further questions.

"*Recross-Examination*
"By Mr. Kaye:

"*Q.* You say that you know these were absentee ballots? *A.* Yes, sir."

The finding of fact by the trial court that the questioned ballots were absentee ballots and that they did not bear the name or the initials of the town clerk as required by secs. 11.57 and 11.61, Stats., is amply supported by the credible evidence. The testimony of Mr. Bonkowski on this issue was not refuted or successfully challenged. Certainly this finding cannot be disturbed on this appeal as being against the great weight and clear preponderance of the evidence.

The most important question before us is whether the pertinent provision of sec. 11.62, Stats., namely, "if the ballot does not contain the name or initials of the clerk of the issuing town, . . . such vote shall not be accepted or counted, . . ." is mandatory or directory.

Sec. 11.62, Stats., in its entirety, is as follows:

"DEPOSIT OF BALLOT IN BALLOT BOX. At any time between the opening and closing of the polls on such election day the inspectors of election of said precinct shall open the outer or carrier envelope only, and announce the absent voter's name. In case the inspectors find the affidavit executed, that the applicant is a duly qualified elector of the precinct and that the applicant has not voted in person at said election, they shall open the envelope containing such voter's ballot in such manner as not to deface or destroy the affidavit thereon and take out the ballot or ballots therein contained without unfolding or permitting the same to be unfolded or examined and, after verification that the ballot has been indorsed by the issuing county, town, city, village clerk, or the secretary under s. 11.66, deposit the same in the proper ballot box or boxes and enter the absent voter's name or voting number after his name on the poll book or list, the same as if he had been present and voted in person. In case such affidavit is found to be insufficient, or that the applicant is not a duly qualified elector in such precinct, or that the ballot envelope is open, or has been opened and resealed, or that the ballot envelope contains more than one ballot of any one kind, or if the ballot does

not contain the name or initials of the clerk of the issuing town, city, village or county, or the secretary under s. 11.66, such vote shall not be accepted or counted. Every ballot not counted shall be indorsed on the back thereof 'rejected' (giving reason therefor). Each rejected ballot shall be reinserted in the affidavit envelope in which it was originally delivered and such affidavit envelopes and ballots shall be enclosed and securely sealed in an envelope clearly marked for rejected absentee ballots on which the inspectors shall indorse 'defective ballots' with a statement of the precinct in which and the date of the election at which they were cast, signed by the inspectors and returned to the same officer and in the same manner as by law provided for the return and preservation of official ballots voted at such election. All absentee affidavit envelopes which have been opened and ballots deposited in the ballot boxes must also be returned in a carrier envelope which is clearly marked 'used absentee affidavit envelopes' and shall be returned to the officer who issued such absentee ballots."

The rule for the construction of election statutes as to whether mandatory or directory, adopted by this court in *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235, and *Olson v. Lindberg* (1957), 2 Wis. (2d) 229, 235, 85 N. W. (2d) 775, is as follows:

" 'The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed "irregularities," and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election.' "

The appellant Boho cites sec. 5.011, Stats., which provides:

"CONSTRUCTION OF TITLE II. Title II shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

In keeping with sec. 5.011, Stats., this court has quite consistently construed the provisions of election statutes as directory rather than mandatory so as to preserve the will of the elector. Statutes which have been held to be directory and not mandatory and the cases so holding are as follows: Sec. 6.23 (11), *State ex rel. Tank v. Anderson* (1927), 191 Wis. 538, 211 N. W. 938; sec. 6.32, *State ex rel. Bancroft v. Stumpf* (1867), 21 Wis. 586 (*579); sec. 6.41, *Ollmann v. Kowalewski* (1941), 238 Wis. 574, 300 N. W. 183; sec. 6.60, *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537; sec. 10.36, *State ex rel. Oaks v. Brown* (1933), 211 Wis. 571, 249 N. W. 50; sec. 11.55, *Petition of Anderson* (1961), 12 Wis. (2d) 530, 107 N. W. (2d) 496; sec. 11.59, *Sommerfeld v. Board of Canvassers, supra.*

In *Petition of Anderson, supra,* absentee ballots were challenged because applications for the absentee ballots were not made within the time provided by secs. 11.55 and 11.57, Stats. We held therein that the time element as set forth in these statutes was directory and that ballots were valid. In discussing whether election statutory regulations should be construed as mandatory or directory, the opinion at pages 533, 534, states:

"Throughout the statutes with reference to elections the intent of the legislature is apparent. It is to encourage and assist qualified electors to cast their ballots for candidates of their choice. To prevent fraud, the legislature in some instances has specifically stated that there must be strict compliance with a statute or a ballot cannot be counted. In so far as we have been called upon to

construe the statutes we have held that where the legislature has provided in explicit language that absentee ballots shall not be counted unless certain provisions of the statute are complied with, compliance with those provisions is mandatory. Where it has not done so expressly and in clear language we have held that the provisions regulating absentee voting are directory, and that strict compliance therewith is not required."

The *Anderson* decision was announced on February 7, 1961. Sec. 11.62, Stats., was amended on July 28, 1961, so as to include ballots not containing the name or initials of the issuing municipal clerk. The pertinent portion of sec. 11.62, with emphasis added to indicate the amendment, is as follows:

"In case such affidavit is found to be insufficient, or that the applicant is not a duly qualified elector in such precinct, or that the ballot envelope is open, or has been opened and resealed, or that the ballot envelope contains more than one ballot of any one kind, *or if the ballot does not contain the name or initials of the clerk of the issuing town,* . . . such vote shall not be accepted or counted."

The conclusion is inescapable that the legislature has expressly by explicit and clear language provided that an absentee ballot not containing the name or initials of the issuing municipal clerk shall not be counted.

In this instance it appears without dispute that the questioned ballots did not contain the name or the initials of the town clerk. While it equally appears that the ballots were not challenged and put into the ballot box contrary to statutory direction, the trial court found upon ample credible evidence that the questioned ballots were in fact absentee so as to come within the restrictive provisions of sec. 11.62, Stats. Under the mandate of the statute the three questioned absentee ballots, all marked for the appellant Boho, should not have been counted.

The appellant Boho contends that if sec. 11.62, Stats., is mandatory, it is unconstitutional under sec. 1, art. III,

Const. In support of this argument appellant cites *Ollmann v. Kowalewski, supra.* In *Ollmann* several ballots cast at the regular polling place were not initialed by both ballot clerks. One clerk placed his own initials and those of his fellow clerk on the questioned ballots. This court held that sec. 6.41 was directory and not mandatory and that if mandatory it was unconstitutional.

"The voter would not knowingly be doing wrong. And not to count his vote for no fault of his own would deprive him of his constitutional right to vote. Any statute that purported to authorize refusal to count ballots cast under the instant circumstance would be unconstitutional. A statute purporting so to operate would be void, rather than the ballots. And the ballots not being void, should be counted notwithstanding the statute. Voting is a constitutional right, sec. 1, art. III, Const., and any statute that denies a qualified elector the right to vote is unconstitutional and void." *Ollmann v. Kowalewski, supra,* page 578.

*Ollmann* must be distinguished on two grounds. In *Ollmann* the voter received a ballot with initials marked upon it at a regular polling place. In this instance at the times the voter received the ballot and cast his vote the ballot did not have any authenticating name or initial on it. Further, the ballots in question here are absentee ballots. Clearly, the legislature could determine that fraud and violation of the sanctity of the ballot could much more readily be perpetrated by use of an absentee ballot than under the safeguards provided at a regular polling place.

"While the right of the citizen to vote in elections for public officers is inherent, it is a right nevertheless subject to reasonable regulation by the legislature. *State ex rel. McGrael v. Phelps, supra; State ex rel. La Follette v. Kohler* (1930), 200 Wis. 518, 228 N. W. 895, and cases cited.

"It is true that the right of a qualified elector to cast his ballot for the person of his choice cannot be destroyed or substantially impaired. However, the legislature has

the constitutional power to say how, when, and where his ballot shall be cast. . . ." *State ex rel. Frederick v. Zimmerman* (1949), 254 Wis. 600, 613, 37 N. W. (2d) 472, 37 N. W. (2d) 473.

We conclude that the legislature could, upon reasonable grounds, require that absentee ballots must be authenticated by the municipal clerk and that a ballot without such authentication could not be counted in calculating the result of a public election.

The judgment of the trial court determining the three questioned absentee ballots cast for the appellant Boho to be invalid, and declaring the respondent Gradinjan to have been elected to the office of town chairman is affirmed.

*By the Court.*—Judgment affirmed.