COURT OF APPEALS
DECISION
DATED AND FILED

March 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1233**

Cir. Ct. No. **2024CV407**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

TAMMY GONFIANTINI,

APPELLANT-APPELLANT,

V.

ROCK COUNTY BOARD OF CANVASSERS,
REGENIA STEVENS, AND LISA TOLLEFSON,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Rock County: JEFFREY S. KUGLITSCH, Judge. *Affirmed and cause remanded*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Following a recount requested by candidate Tammy Gonfiantini, the Rock County Board of Canvassers declared Gonfiantini's opponent, Regenia Stevens, to be the winner in an election for a seat on the county

board of supervisors. Gonfiantini unsuccessfully appealed the Board's decision in the circuit court, and in her appeal to this court, she argues that the Board erroneously counted three ballots, all for Stevens, that had not been initialed by the appropriate elections official. We conclude that the statutes that govern elections and recounts do not allow ballots to be rejected based on the error that Gonfiantini identified. We therefore affirm.

¶2      Separately, we grant Stevens' motion for costs, fees, and reasonable attorney fees as a sanction for commencing and continuing a frivolous appeal to this court. *See* WIS. STAT. §§ 809.25 and 895.044 (2023-24).[1] We remand to the circuit court to determine the amount of the award.

## BACKGROUND

¶3      Gonfiantini and Stevens were opposing candidates in the April 2024 election for a seat on the county board of supervisors. After the votes were canvassed, the Board of Canvassers determined that Stevens received 346 votes and Gonfiantini received 343 votes. It declared Stevens to be the winner by three votes.

¶4      Gonfiantini petitioned for a recount pursuant to WIS. STAT. § 9.01(1). The Board took minutes of the recount proceeding as required by § 9.01(5).

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶5    Gonfiantini challenged several ballots during the recount. The Board granted Gonfiantini's challenge to one absentee ballot because it had been witnessed by Stevens.[2] It denied Gonfiantini's remaining challenges.

¶6    This appeal pertains to three ballots, all votes for Stevens, that Gonfiantini challenged on the ground that they had not been initialed by the appropriate elections official.[3] The Board rejected Gonfiantini's challenge to the unendorsed ballots, reasoning that guidance issued by the state elections commission did not allow ballots to be rejected or drawn down for that reason. The Board explained: "Ballots are not drawn down due to a poll worker [or clerk] error." The minutes of the recount do not reflect any assertion by Gonfiantini that the ballots were fraudulently cast, nor do the minutes reflect that she introduced evidence to support any claim of fraud.

¶7    After addressing all of Gonfiantini's challenges, the Board of Canvassers confirmed that Stevens was the winner by two votes.

---

[2] *See* WIS. STAT. § 6.87(7) (providing that "[n]o individual who is a candidate in the election in which absentee ballots are cast may serve as a witness" and that "[a]ny candidate who serves as a witness shall be penalized by discounting the number of votes for [the candidate's] candidacy equal to the number of certificate envelopes bearing [the candidate's] signature").

[3] For ease of reference, we refer to these three ballots as the "unendorsed ballots."

Gonfiantini's pleadings allege that the three unendorsed ballots are absentee ballots, but this allegation does not appear to be fully accurate—according to the minutes from the recount, two of the challenged ballots were absentee ballots that were counted at the "Absentee Ballot Processing Location," and the third was an "ExpressVote" ballot that was cast at the Ward 10 polling location. Although Gonfiantini argues that we must assume for purposes of this opinion that the three ballots in question were absentee ballots, any distinction between absentee and in-person ballots does not affect the outcome of the appeal. This is because, as we explain in our discussion, Gonfiantini's arguments would fail whether the unendorsed ballots were cast in person or absentee. *See infra*, ¶¶19-29.

¶8     Gonfiantini filed a "complaint and notice of appeal of recount" in the Rock County Circuit Court pursuant to WIS. STAT. § 9.01(6).   The complaint designated the Board as the respondent, and further designated Stevens and Rock County Clerk Lisa Tollefson as notice parties.  The Board and Tollefson appeared in the action by the same counsel.[4]   Stevens retained her own counsel and appeared in the action as an interested party, and the circuit court granted her motion to intervene.

¶9     In her complaint, Gonfiantini alleged that the three unendorsed ballots should not have been counted, and that the Board's decision to count them was a mistake of law.  Specifically, she argued that WIS. STAT. §§ 6.80, 6.87, and 6.88 require each ballot to be endorsed by the elections official who issues it, and she cited a paragraph from *Logic v. City of South Milwaukee Board of Canvassers*, 2004 WI App 219, ¶7, 277 Wis. 2d 421, 689 N.W.2d 692, in support of her argument that absentee ballots that lack such initials may not be counted. Gonfiantini asked the circuit court to set aside or modify the results of the recount.

¶10    The Board filed a motion to dismiss for failure to state a claim, which Stevens joined.[5]  The Board argued that its decision to reject Gonfiantini's

---

[4] For ease of reference, we refer to the arguments that are collectively made by the Board and Tollefson as having been made by the Board.

[5] It is not immediately apparent that the motion to dismiss procedure found in WIS. STAT. § 802.06(2)(a) is available in a circuit court review of a recount proceeding.  *See* WIS. STAT. § 9.01(6), (7) (addressing court procedures and the court's scope of review).  But we need not resolve that potential issue because Gonfiantini did not object to the motion to dismiss on that ground, nor has she argued that she had additional evidence or arguments not presented in her complaint and briefing in opposition to the motion to dismiss that she could have used to bolster her claim about the unendorsed ballots.

Separately, both parties cite to the official minutes of recounts provided for by WIS. STAT. § 9.01(5), and neither party argues that it was inappropriate for the circuit court to consider those minutes for purposes of its decision.

challenge to the unendorsed ballots was consistent with WIS. STAT. § 7.51, which governs the canvassing and tallying of votes on election night, and WIS. STAT. § 9.01, which governs the recount procedure. In particular, the Board argued, § 9.01 unambiguously provides that unendorsed absentee ballots should not be rejected under the circumstances that Gonfiantini identified, and Gonfiantini did not allege that any aspect of the recount procedure was inconsistent with § 9.01. Finally, the Board argued that Gonfiantini's reliance on the *Logic* decision was misplaced. As the Board explained, the portion of the *Logic* decision on which Gonfiantini purported to rely was based on a prior version of the statutes, and that prior statutory language, which had expressly required unendorsed absentee ballots to be rejected, had long since been eliminated.

¶11 Following briefing and a hearing, the circuit court granted the motion to dismiss. In a thorough oral ruling, the court agreed with the Board of Canvassers' and Stevens' interpretation of the pertinent elections statutes, and it rejected Gonfiantini's reliance on the *Logic* decision.

¶12 Gonfiantini appeals. Following the submission of Gonfiantini's appellant's brief, Stevens filed a motion, which Gonfiantini opposes, that asks us to impose sanctions for a frivolous appeal.

## DISCUSSION

¶13 As stated, Gonfiantini appeals the Board's decision to reject her challenge to three ballots, and Stevens moves for sanctions on the grounds that Gonfiantini's appeal is frivolous. We begin with Gonfiantini's appeal, and then turn to Stevens' motion for sanctions.

5

### I. Gonfiantini's Challenge to the Unendorsed Ballots

¶14 On appeal, we review the decision of the Board of Canvassers, rather than the decision of the circuit court. *See Miller v. Zoning Board of Appeals*, 2022 WI App 51, ¶18, 404 Wis. 2d 539, 980 N.W.2d 295. Whether the Board properly rejected the challenge to the unendorsed ballots turns on the interpretation and application of statutes, which is a question of law that we review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852. The goal of statutory interpretation is to discern the intent of the legislature. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. This inquiry "begins with the language of the statute." *Id.*, ¶45 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). We also examine the statute's scope, history, context, subject matter, and purpose to ascertain its meaning. *Id.*, ¶¶46, 48.

¶15 We begin where we must—by analyzing the language of the pertinent statutes. After determining that they are unambiguous, we address and reject Gonfiantini's arguments about the *Logic* decision and her miscellaneous assertions about fraud.

### A. The Statutes

¶16 It is undisputed that the Wisconsin statutes that govern in-person election-day voting require elections inspectors to endorse in-person ballots with

their initials before providing the ballots to electors.[6] It is likewise undisputed that the statutes governing absentee voting require municipal clerks to endorse absentee ballots with their initials before providing the ballots to absentee voters.[7] And finally, it is undisputed that elections officials are required to verify that absentee ballots were endorsed by the issuing clerks when the officials vote and record absentee ballots on election day.[8] None of that is at issue here.

¶17     The disputed issue is about the consequence if a ballot that is cast in an election is missing the required endorsement by the inspector or clerk. More specifically, the issue is whether such ballots should be counted in the election, or whether such ballots must instead be rejected. In some cases, courts have referred to this type of inquiry as turning on whether the statutory requirement is "mandatory" or "directory." *See, e.g.*, **Gradinjan v. Boho**, 29 Wis. 2d 674, 683,

---

[6] *See* WIS. STAT. § 7.37(4) (governing the in-person ballot distribution procedure, and providing that, at polling places that utilize paper ballots or electronic voting systems in which ballots are distributed to electors, "2 inspectors shall be assigned to take charge of the official ballots," and "shall write their initials on the back of each ballot and deliver … one ballot properly endorsed by each of them" to "each elector as [the elector] enters the voting booth"); WIS. STAT. § 6.80(2)(d) (governing the mechanics of in-person election-day voting, and providing: "If an elector receives a ballot which is not initialed by 2 inspectors, or is defective in any other way, the elector shall return it to the inspectors. If the initials are missing, the inspectors shall supply the missing initials. If the ballot is defective, they shall destroy it and issue another ballot to the elector.").

[7] *See* WIS. STAT. § 6.87(1) (governing the process for issuing absentee ballots, and providing in relevant part: "Upon proper request [for an absentee ballot] made within the period prescribed [by statute], the municipal clerk or a deputy clerk authorized by the municipal clerk shall write on the official ballot, in the space for official endorsement, the clerk's initials and official title.").

[8] *See* WIS. STAT. § 6.88(3)(a) (governing the process for voting and recording absentee ballots at the polls and providing: "Unless the ballot is cast under [WIS. STAT. § 6.95, which addresses procedures for challenged electors], the inspectors shall verify that the ballot has been endorsed by the issuing clerk."); *see also* WIS. STAT. § 7.52 (providing a similar process for voting and recording absentee ballots at a central location).

139 N.W.2d 557 (1966) ("where the legislature has provided in explicit language that absentee ballots shall not be counted unless certain provisions of the statute are complied with, compliance with those provisions is mandatory"); *see also Roth v. La Farge School District Bd. of Canvassers*, 2001 WI App 221, ¶34, 247 Wis. 2d 708, 634 N.W.2d 882 (concluding that the statutory requirement that a ballot cast at a polling place contain the initials of two elections inspectors is "directory," and that the board of canvassers erred during a recount when it rejected a ballot that was initialed by just one inspector).[9]

¶18 The Board of Canvassers and the circuit court both determined that the absence of clerk or inspector initials on a ballot is not, by itself, a basis for rejecting a ballot. Gonfiantini argues that the Board and the court were wrong and that unendorsed ballots are a "nullity," but she fails to cite any statute that supports her argument.

¶19 The pertinent statutes that address whether an unendorsed ballot should be rejected are WIS. STAT. § 6.80 (which governs the mechanics of in-person election-day voting); WIS. STAT. § 7.37 (which governs inspectors' duties, including the distribution of in-person ballots); WIS. STAT. § 6.88 (which governs

---

[9] In the reply brief she filed in this court, Gonfiantini addresses *Roth* for the first time in these proceedings and attempts to distinguish it on the ground that the ballot that was challenged in *Roth* was signed by one elections inspector, which, Gonfiantini asserts, constitutes "substantial compliance" with a directory endorsement requirement. We reject Gonfiantini's argument about *Roth* for two reasons. First, to the extent that Gonfiantini is now arguing that, even if the endorsement requirement is merely directory, she should prevail because there was not substantial compliance, she forfeited any such argument. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981) ("We will not, as a general rule, consider issues raised by appellants for the first time in a reply brief."). Second, we do not read the *Roth* court's determination that the ballot in that case substantially complied with the applicable law as turning on the fact that it bore one set of inspector initials. *See Roth v. La Farge School District Bd. Of Canvassers*, 2001 WI App 221, ¶¶33-34, 247 Wis. 2d 708, 634 N.W.2d 882.

the process for voting and recording absentee ballots on election day); WIS. STAT. § 7.51 (which governs the process for canvassing elections results); and WIS. STAT. § 9.01 (which governs the recount procedure). As we now explain, when read together, these statutes unambiguously establish that the lack of inspector or clerk initials on a ballot is not by itself a reason for rejecting the ballot, whether in an initial canvass or during a recount. Unendorsed ballots must be counted in the election unless there is a reason beyond the lack of an endorsement to reject them, such as when the total number of ballots exceeds the total number of electors recorded in the poll books.

¶20     We begin with WIS. STAT. §§ 6.80 and 7.37, which, as noted, govern the mechanics of in-person voting and the distribution of ballots to electors. Specifically, § 7.37(4) provides that in-person ballots shall be initialed by two elections inspectors, and § 6.80(2)(d) provides that, if an elector notices that the ballot the elector was given was not initialed by two inspectors, the elector "shall return" the ballot to the inspectors to be properly endorsed. Thus, although the statute provides a mechanism that an elector can use to correct the error, it does not provide any consequence, such as a later rejection of the in-person ballot, if the elector does not notice the error and fails to correct it.

¶21     We now turn to WIS. STAT. § 6.88, which is critical to our analysis because § 6.88(3)(b) specifically lists the reasons that absentee ballots should be rejected. As we now explain, § 6.88 does not authorize elections officials to reject absentee ballots that were not initialed by the issuing clerk.

¶22     We first summarize how ballots are processed pursuant to WIS. STAT. § 6.88. Section 6.88(3)(a) sets forth a public process, in which inspectors examine the absentee envelopes and ballots and mark the poll lists. More

9

specifically, inspectors "announce the name of the absent elector" and examine the envelope to "find that the certification has been properly executed, the applicant is a qualified elector of the ward or election district, and the applicant has not voted in the election." *See* § 6.88(3)(a). If all of those findings are made, the inspectors mark the poll list to indicate that an absentee ballot has been cast by the elector. *See* § 6.88(3)(a). The inspectors then open the envelope and "verify that the ballot has been endorsed by the issuing clerk."[10] *See* § 6.88(3)(a).

¶23 After the envelope and ballot are inspected, "[t]he inspectors shall then deposit the ballot into the proper ballot box and enter the absent elector's name … on the poll list," so long as there is no reason to reject the ballot. WIS. STAT. § 6.88(3)(a). Section 6.88(3)(b) specifically lists reasons for rejecting an absentee ballot:

> When the inspectors find that a certification is insufficient,[11] that the applicant is not a qualified elector in the ward or election district, that the ballot envelope is open or has been opened and resealed, that the ballot envelope contains more than one ballot of any one kind or, [with exceptions that are not pertinent here], that the certificate of a military or overseas elector who received an absentee ballot by facsimile transmission or electronic mail is missing, or if proof is submitted to the inspectors that an elector voting an absentee ballot has since died, the inspectors shall not count the ballot. The inspectors shall

---

[10] Under some circumstances, an elector may also be required to enclose proof of the elector's residence with their absentee ballot, and inspectors will verify whether "proof of residence is enclosed." *See* WIS. STAT. § 6.88(3)(a).

[11] The "certification" that is referenced here is the printed certificate on the absentee ballot envelope, which is signed by the elector and a witness. The form of the certificate is discussed in WIS. STAT. § 6.87(2).

endorse every ballot not counted on the back, "rejected (giving the reason)."…[12]

¶24     As is evident from the text, WIS. STAT. § 6.88(3)(b) does not identify a missing endorsement as a reason that an absentee ballot can be rejected. *See Kalal*, 271 Wis. 2d 633, ¶46 ("In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." (citation omitted)); *Benson v. City of Madison*, 2017 WI 65, ¶32, 376 Wis. 2d 35, 897 N.W.2d 16 (generally speaking, when the legislature specifically lists certain reasons, we assume that the list is exhaustive and that the legislature intended to exclude other reasons).   Thus, even if inspectors determine that an absentee ballot was not properly endorsed by the issuing clerk, the ballot should be deposited in the ballot box and counted in the election.[13]

¶25     We now consider WIS. STAT. § 7.51, which governs the process for canvassing votes after the polls close.  This section is also critical to our analysis because it identifies the one circumstance in which a ballot (whether in-person or absentee) may be set aside due to the lack of an endorsement.   That one circumstance is when it is necessary to set ballots aside in order to reconcile the number of ballots with the number of electors that cast ballots in the election.

---

[12]   WISCONSIN STAT. § 6.88(3)(b) goes on to set forth the procedure for securing rejected ballots.

[13]   We observe that WIS. STAT. § 7.52 sets forth similar procedures that are used if the municipality passes an ordinance providing that, in lieu of recording, voting, and canvassing absentee ballots at the polling places, the municipal board of absentee ballot canvassers will canvass all absentee ballots.  The differences between § 7.52 and the polling location procedures set forth in WIS. STAT. § 6.88 are not material to the disputed issues here.  Using language that is identical in all relevant respects to § 6.88(3)(a) and (b), § 7.52(3)(a) provides that the "absentee ballot canvassers shall verify that the ballot has been endorsed by the issuing clerk," and § 6.88(3)(b) identifies reasons for rejecting absentee ballots.  Those reasons do not include missing clerk initials.

¶26    WISCONSIN STAT. § 7.51 provides, in relevant part, that the inspectors use the poll list to determine the number of electors who cast ballots in the election.  *See* § 7.51(2)(a).  The inspectors then determine the number of ballots that were cast.  *See* § 7.51(2)(a).  If the number of ballots cast is equal to or less than the number of electors who cast ballots, the inspectors proceed to count the ballots and report the results.  *See* § 7.51(e).

¶27    However, the canvassers have a problem that needs to be resolved if "the number of ballots exceeds the number of voting electors as indicated on the poll list."  *See* WIS. STAT. § 7.51(2)(c).  To address that situation, § 7.51(2)(c) and (e) provide a process for drawing down the number of ballots until it equals the number of electors.  And, as we now explain, that process may target any ballots that were not properly endorsed by the election inspectors or clerk.  Section 7.51(2)(c) provides, in relevant part:

> Whenever the number of ballots exceeds the number of voting electors as indicated on the poll list, the inspectors shall place all ballots face up to check for blank ballots.  In this paragraph, "blank ballot" means a ballot on which no votes are cast for any office or question.  The inspectors shall mark, lay aside and preserve any blank ballots. Except in municipalities where absentee ballots are canvassed under [WIS. STAT. §] 7.52,[14] if the number of ballots still exceeds the number of voting electors, the inspectors shall place all ballots face down and proceed to check for the initials.  The inspectors shall mark, lay aside and preserve any ballot not bearing the initials of 2

___

[14] Again, WIS. STAT. § 7.52 provides similar procedures that are to be used if absentee ballots are canvassed in a central location, rather than at the polling places.  The minor differences between the canvassing procedures in § 7.52 and WIS. STAT. § 7.51 are not material to the disputed issues here.  Using language that is in all relevant respects identical to § 7.51, § 7.52(4)(c) makes evident that unendorsed ballots might be set aside if necessary to reconcile the number of absentee ballots and the number of absentee electors voting in the election.

12

inspectors or any absentee ballot not bearing the initials of
the municipal clerk.…[15]

Thus, as § 7.51 makes evident, the only reason that a missing endorsement would result in a ballot not being counted in the election-day canvass is if it is necessary to put the unendorsed ballot aside to reconcile the number of ballots with the number of electors who are recorded as having cast ballots in the election.

¶28 Finally, we turn to WIS. STAT. § 9.01(b), which provides detailed procedures for conducting a recount. As with the election-day canvassing procedures, § 9.01(b) provides that unendorsed ballots may be set aside in a recount only if the number of ballots exceeds the number of voters, and only after other measures are taken to reconcile the numbers of electors and ballots. Section 9.01(1)(b) provides, in relevant part (with a special focus on subdivision 4.d.):

> The recount shall proceed for each ward or municipality as follows:
>
> 1. The board of canvassers shall first compare the poll lists and determine the number of voting electors.
>
> 2. The board of canvassers shall then examine the absentee ballot envelopes. Any defective absentee ballot envelopes shall be laid aside, properly marked and carefully preserved. The number of voters shall be reduced by the number of ballot envelopes set aside under this subdivision. An absentee ballot envelope is defective only if it is not witnessed or if it is not signed by the voter or if the certificate accompanying an absentee ballot that the voter received by facsimile transmission or electronic mail is missing.

---

[15] Although not directly relevant here, WIS. STAT. § 7.51(2)(e) goes on to provide a procedure for randomly drawing down ballots if, after setting aside any blank ballots and ballots that are missing inspector or clerk initials, "the number of ballots still exceeds the total number of electors recorded on the poll list."

3. The board of canvassers shall then examine the container or bag containing the ballots to be certain it has not been tampered with ….

4.a. When the container or bag has been checked, it shall be opened and the contents removed. The board of canvassers shall, without examination other than what is necessary to determine that each is a single ballot, count the number of ballots in the container or bag, excluding ballots removed under [WIS. STAT. §] 7.51(2)(e).[16]

b. The board of canvassers shall then, for each opened absentee ballot envelope that was laid aside as defective under subd. 2., without inspection, randomly draw one absentee ballot from the container or bag. In differentiating absentee ballots from other ballots, the board of canvassers shall presume that a ballot initialed only by the municipal clerk [or other specified officials] is an absentee ballot. If there are more defective absentee ballot envelopes than there are probable absentee ballots, all of the probable absentee ballots shall be removed from the container or bag. Additional ballots shall be removed only if the number of remaining ballots still exceeds the number of voting electors recorded under subd. 1., reduced by the number of defective envelopes set aside under subd. 2. All ballots removed shall not be counted, but shall be marked as to the reason for their removal, set aside and carefully preserved.

c. If, after completing the steps set forth in subd. 4.b., the number of ballots still exceeds the number of voters, the board of canvassers shall place all ballots face up to check for blank ballots. Any blank ballots shall be so marked, set aside and carefully preserved.

d. If, after completing the steps set forth in subd. 4.c., the number of ballots still exceeds the number of voters reduced by the number of defective envelopes set aside under subd. 2., the board of canvassers shall place all ballots face down to check the initials. *Any ballot not properly initialed by 2 inspectors or any absentee ballot not properly initialed by the municipal clerk [or other specified officials] shall be temporarily set aside and the board of canvassers shall, without inspection, randomly*

---

[16] Although not relevant here, WIS. STAT. § 7.51(2)(e) is the random draw down procedure that is discussed at *supra*, n.15.

> *draw from these ballots as many as are necessary to reduce the number of ballots to equal the number of voters.* Any ballots removed for lack of initials shall not be counted but shall be marked, set aside and carefully preserved.
>
> e. If, after completing the steps set forth in subd. 4.d., the number of ballots still exceeds the number of voters reduced by the number of defective envelopes set aside under subd. 2., the remaining ballots shall be [randomly drawn down]. These ballots shall not be counted but shall be marked as having been removed by the canvassers on recount due to an excess number of ballots, set aside and carefully preserved.
>
> 5. When the number of ballots and voters agree, or after noting that the number of voters exceeds the number of ballots, the board of canvassers shall return all ballots to be counted to the ballot box …. The recount shall then begin.

(Emphasis added.) Section § 9.01(1)(b) goes on to provide that a candidate "may object to the counting of any ballot," § 9.01(1)(b)11., but it does not provide that the lack of an endorsement, alone, is a basis for a board of canvassers to reject any ballot.

¶29 Gonfiantini does not meaningfully address any of these statutory provisions in her appellate briefing. Indeed, she does not even cite WIS. STAT. § 6.88(3)(b) or WIS. STAT. § 9.01(1)(b) in her opening brief, other than to note that the circuit court found their language to be dispositive. And she makes no attempt to explain how her argument could be reconciled with the unambiguous language of § 6.88(3)(b), § 9.01(1)(b), or the other statutes we have discussed, which demonstrate that a ballot (whether cast in-person or absentee) will not be rejected for lack of endorsement alone.

¶30 To support her position, Gonfiantini instead cites WIS. STAT. § 6.84, which declares the "legislative policy" regarding absentee voting. Section 6.84 provides that, "to prevent the potential for fraud and abuse," § 6.84(1), certain

15

provisions regulating absentee voting should be construed as "mandatory," § 6.84(2). Section 6.84(2) further provides that "[b]allots cast in contravention of the procedures specified" in those mandatory sections "may not be counted" or "included in the certified result of any election." One significant problem with Gonfiantini's reliance on § 6.84 is that the endorsement requirement of WIS. STAT. § 6.87(1) is not among the mandatory provisions listed in § 6.84(2).[17] Accordingly, § 6.84 actually undermines Gonfiantini's argument that unendorsed absentee ballots should not be counted under the circumstances here.

¶31 Gonfiantini also cites WIS. STAT. § 6.93, which provides that "[t]he vote of any absentee elector may be challenged for cause" and that the elections inspectors "shall have all the power and authority given them to hear and determine the legality of the ballot the same as if the ballot had been voted in person." This statute provides no assistance to Gonfiantini because, as we have explained, there is no statute that allows or requires any ballot, whether in-person or absentee, to be rejected solely on the ground that it was not endorsed by an inspector or clerk.

¶32 To be sure, there was a time in Wisconsin history when the applicable statutes expressly directed elections inspectors to reject any absentee ballots that had not been endorsed by the issuing clerk. More specifically, WIS. STAT. § 11.62 (1965-66) provided, in pertinent part: "[I]f [an absentee] ballot does not contain the name or initials of the clerk of the issuing town, city, village or county, or [other officials designated by statute], *such vote shall not be*

---

[17] The mandatory provisions identified by WIS. STAT. § 6.84(2) are WIS. STAT. §§ 6.86, 6.87(3)-(7), and 9.01(1)(b)2. and 4.

*accepted or counted.*" (Emphasis added.) Likewise, the original version of WIS. STAT. § 6.88(3)(b) (1967-68), which was created in 1966 to replace § 11.62 (1965-66), contained similar language, specifically providing that, if an absentee ballot "does not contain the initials of the clerk of the issuing municipality, … *the vote shall not be accepted or counted.*" *See* § 6.88(3)(b) (1967-68) (created by 1966 Wis. Laws, ch. 666). (Emphasis added.)

¶33    However, in 1970, the legislature enacted a bill that eliminated the statutory language that had previously directed elections inspectors to reject absentee ballots that were unendorsed. *See* 1969 Wis. Laws, ch. 420 (amending WIS. STAT. § 6.88(3)(b) (1965-66)). The elimination of that language from § 6.88(3)(b) (1965-66) was the only change that the bill made to any statute.[18] It is evident that, by eliminating the provision that addressed unendorsed absentee

---

[18] The text of the bill, which we reproduce in full with stricken text indicating language that was removed from the statute, provided that WIS. STAT. § 6.88(3)(b) (1967-68) was amended to read:

> 6.88(3)(b)  When the affidavit or certification is found to be insufficient, the applicant is not a qualified elector in the precinct, the ballot envelope is open or has been opened and resealed, the ballot envelope contains more than one ballot of any one kind, ~~the ballot does not contain the initials of the clerk of the issuing municipality,~~ or if due proof appears to the inspector that an absentee elector has since died, the vote shall not be accepted or counted. Every ballot not counted shall be indorsed on the back, "rejected (giving the reason)." Each rejected ballot shall be reinserted into the affidavit envelope in which it was delivered and the affidavit envelopes and ballots shall be enclosed and securely sealed in an envelope marked for rejected absentee ballots. The inspectors shall indorse the envelope, "defective ballots" with a statement of the precinct and date of the election, signed by the inspectors and returned to the same official in the same manner as official ballots voted at the election.

1969 Wis. Laws, ch. 420.

ballots, the legislature intended to change how unendorsed absentee ballots would be treated under Wisconsin statutes.  *See **Lang v. Lang***, 161 Wis. 2d 210, 220, 467 N.W.2d 772 (1991) (we presume that the legislature "intends to change the law" when it amends a statute).  Therefore, statutory history confirms that unendorsed ballots should not be rejected on that basis alone.  *See **Richards v. Badger Mut. Ins. Co.***, 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581 ("[a] review of statutory history," which "encompasses the previously enacted and repealed provisions of a statute," is "part of a plain meaning analysis").

¶34    At times, Gonfiantini seems to suggest that we can or should interpret the statutes differently "under the facts of this case," where the application of the rule determines the outcome of the election and a different rule would produce a different result.  If Gonfiantini is making that argument, it is not only frivolous, but also deeply troubling.  If the statutory standards governing which ballots should and should not be counted in an election were subject to a different interpretation in close elections if the party challenging a ballot might benefit from the deviation, the result would be an abandonment of the rule of law.

## B.  The *Logic* Decision

¶35    In the absence of statutory support for her argument, Gonfiantini points to a single parenthetical found in *Logic*, 277 Wis. 2d 421.  Yet, as the Board of Canvassers and the circuit court have explained, the *Logic* decision does not lend any support to Gonfiantini's argument.

¶36    By way of background, Logic was a candidate in a mayoral election, and the initial vote tally had Logic tied with his opponent.  *Id.*, ¶2.  Logic's opponent sought a recount and was declared the winner, and Logic appealed the recount decision to the circuit court.  *Id.*  However, Logic did not serve his appeal

on his opponent as required by WIS. STAT. § 9.01(6)(a), and the circuit court dismissed the appeal for lack of jurisdiction. *Id.*, ¶¶1-2.

¶37    Logic then sought review in the court of appeals. He argued, among other things, that the statutory service requirement was directory rather than mandatory, and he cited *Gradinjan* to support his assertion that the service requirement should be interpreted as directory "in order to preserve the electorate's will." *Id.*, ¶5 (citing *Gradinjan*, 29 Wis. 2d at 682). As noted above, *Gradinjan* held that compliance with statutory provisions is mandatory if the legislature provides "that absentee ballots shall not be counted unless [the provisions] are complied with," but that other provisions should be interpreted as directory to "preserve the will of the elector." *Gradinjan*, 29 Wis. 2d at 682-83.

¶38    This court rejected Logic's reliance on *Gradinjan* for two reasons. First, we concluded that the statutory service requirement was an "electorate-will neutral requirement." Thus, we determined, the "will-of-the-electorate rule" had no bearing on the matter. *Logic*, 277 Wis. 2d 421, ¶6. Second, we stated that "even under the 'will of the electorate' rule," the *Gradinjan* court recognized that "votes will be discarded … if noncompliance with the election law is not *de minimis*." *Id.*, ¶7. We concluded that Logic's appeal of the recount decision had been properly dismissed for lack of jurisdiction. *Id.*, ¶¶7, 9.

¶39    None of these core points from *Logic* have any direct bearing on Gonfiantini's argument about unendorsed ballots, and Gonfiantini does not rely on them. She instead purports to rely on the *Logic* court's parenthetical summary of the holding of the *Gradinjan* case. In that parenthetical, the *Logic* court summarized the holding of *Gradinjan* as follows: "requirement that absentee ballots bear either the name or the initials of the town clerk is to prevent possible

19

fraud; thus, absentee ballots without either the town clerk's name or initials may not be counted." *Id.*, ¶7 (citing *Gradinjan*, 29 Wis. 2d at 682-83).

¶40 The cited parenthetical from *Logic* accurately summarizes the rationale of the *Gradinjan* decision, which accurately reflected the statutes in 1966, when *Gradinjan* was decided. As mentioned, the statutes in 1966 explicitly provided that absentee ballots without the name or initials of the issuing clerk "shall not be accepted or counted." *See supra*, ¶32 (discussing WIS. STAT. § 11.62 (1965-66)). The *Gradinjan* court explained that the legislature explicitly made that provision mandatory, and had a rational basis for doing so. *Gradinjan*, 29 Wis. 2d at 682-83. As *Gradinjan* explained, the provision was not unconstitutional because "the legislature could determine that fraud … could much more readily be perpetrated by use of an absentee ballot than under the safeguards provided at a regular polling place." *Id.* at 684.

¶41 However, as we have also explained, the legislature amended Wisconsin's elections laws after *Gradinjan* was decided, and in so doing, the legislature specifically eliminated the statutory language that had previously instructed inspectors to reject unendorsed absentee ballots. *See supra*, ¶33 (discussing 1969 Wis. Laws, ch. 420). By eliminating the statutory language on which the *Gradinjan* court relied, the legislature changed the substantive law on which *Gradinjan*'s interpretation and analysis was based.

¶42 Gonfiantini argues that, by summarizing *Gradinjan*'s analysis of the then-existing statutes in a parenthetical, the *Logic* court was somehow certifying that the substantive law undergirding *Gradinjan*'s analysis continued to remain in full force and effect, even though the statutory language that was the source of that substantive law had been eliminated by legislative amendment before *Logic* was

20

decided. That is, Gonfiantini contends that the *Logic* court's summary of *Gradinjan* "brings the rule that 'absentee ballots without … initials may not be counted' into the [current] statutes." This argument is fatuous. As stated, when the legislature acts to remove substantive language from the statutes, we assume that it intended to change the law. *See Lang*, 161 Wis. 2d at 220. If a judge could reinstate a repealed statute merely by summarizing the rationale of a prior judicial decision, then courts would be legislating from the bench, whether by intention or through inadvertence.

¶43 Gonfiantini also contends that, by summarizing *Gradinjan*'s holding in a parenthetical, the *Logic* court set out to establish an "analytical framework" for determining which election law provisions are mandatory and which are directory. More specifically, Gonfiantini contends, the analytical framework that *Logic* established "draw[s] on the jurisprudential framework for differentiating fundamental and technical defects under the rules of civil procedure," and must be used to decide which ballots should be counted and which should be rejected. This argument is not consistent with any reasonable reading of the *Logic* decision. In *Logic*, we were called upon to determine whether the circuit court had jurisdiction to hear an appeal of a recount decision, not to establish a new "analytical framework" for resolving disputes over which ballots should be counted in an election. As cases that include *Gradinjan* recognize, disputes over whether a ballot should be counted are resolved by interpreting the pertinent statutory language. *Gradinjan*, 29 Wis. 2d at 682-83.

### C. Gonfiantini's Additional Arguments

¶44 In addition to her arguments about the *Logic* decision, Gonfiantini also advances several arguments that raise the specter of fraud. None are meritorious.

¶45 Gonfiantini argues that there was not "substantial evidence" to support the Board's assumption that the lack of initials on the unendorsed ballots was due to poll worker or clerk error, rather than fraud.[19] But Gonfiantini misses the point—it was her burden to identify a reason that the ballots should be rejected, and if she intended to claim that they were fraudulently cast, Gonfiantini had the opportunity, and the obligation, to provide evidentiary support for that claim. *See* WIS. STAT. § 9.01(5) (providing that a candidate requesting a recount can make offers of evidence, and that a board of canvassers can receive exhibits from any party and take witness testimony). As noted, the statutes do not require or allow ballots to be rejected based on the lack of inspector or clerk initials alone, and therefore we do not consider the lack of an endorsement, alone, to be prima facie evidence of fraud. *See also* **Roth**, 247 Wis. 2d 708, ¶33 (stating that the statutes "create a mechanism by which fraud will be assumed only when the number of ballots and electors are unequal").

¶46 In her appellate briefing, Gonfiantini appears to tacitly acknowledge that she does not have any evidence that the ballots are unendorsed for a reason other than poll worker or clerk error. To that end, she asserts in passing that she

---

[19] The Board of Canvassers and Stevens argue that Gonfiantini forfeited this argument by not raising it in the complaint she filed in the circuit court. Although this may be a fair assessment of the complaint, we nevertheless address Gonfiantini's argument about "substantial evidence" since it is readily rejected as contrary to established law.

22

should have been allowed discovery to challenge the Board's assumption about the reason that the ballots were not initialed. We reject this argument for at least two reasons. First, it is not at all clear that any formal mode of discovery is available in a circuit court review of a recount proceeding under WIS. STAT. § 9.01(6).[20] Second, beyond the bare assertion in her response to the motion to dismiss that it would be "a disservice" to dismiss the case "without any discovery," Gonfiantini did not ask the circuit court to allow her to conduct discovery to support her assertions about fraud.

¶47 Finally, Gonfiantini asserts that "[i]t would be verging on nearly statistically impossible[] that the difference in the vote totals should be exactly the number of unendorsed … ballots, and that all three of those … ballots should be voted for the same candidate." Although not clear, Gonfiantini might be arguing that her assertion about what is "statistically impossible" constitutes some kind of evidence. If so, there are many problems with this argument. Among other things, Gonfiantini does not present any statistical analysis that would back up her assertions. *See* **State v. Burch**, 2021 WI 68, ¶28, 398 Wis. 2d 1, 961 N.W.2d 314 (requiring expert testimony when "the underlying issue is 'not within the realm of ordinary experience of [hu]mankind'" (citation omitted)). And there are reasons to doubt the accuracy of the inputs on which Gonfiantini's conclusory assertion about statistical improbability is based. For example, the Board did not comment on whether, apart from the three ballots for Stevens that Gonfiantini challenged,

---

[20] WISCONSIN STAT. § 9.01(7)(b), which governs the scope of the circuit court proceeding, provides that "the matter shall be summarily heard and determined," and that the "provisions of [WIS. STAT.] chs. 801 to 806 which are inconsistent with a prompt and expeditious hearing do not apply to appeals under this section." Likewise, § 9.01(8)(c) provides that, with limited exceptions, "[t]he court may not receive evidence not offered to the board of canvassers" during the recount proceeding.

there were any other ballots that lacked inspector or clerk initials. The record does not contain the actual ballots that were cast in the election, but it may well be that there were unendorsed ballots for Gonfiantini that Stevens did not challenge—either because Stevens did not need to reduce Gonfiantini's vote count in order to prevail in the election, or because she knew that such a challenge would lack merit based on the unambiguous language of the relevant statutes.

¶48    In sum, for all of these reasons, we reject Gonfiantini's arguments and affirm the circuit court's order dismissing her appeal.

## II.  Stevens' Motion for Costs, Fees, and Reasonable Attorney Fees

¶49    Stevens asks us to enter an order pursuant to WIS. STAT. §§ 809.25(3) and 895.044(5) determining that Gonfiantini commenced and continued a frivolous appeal. In the brief supporting her motion, Stevens represents that she served drafts of the motion and brief on Gonfiantini's attorney well in advance of filing those documents in this court. Gonfiantini did not withdraw her appeal, and instead filed a response to the motion, in which she reiterates the arguments that we have rejected in the discussion above.

¶50    An attorney is required "to make a reasonable investigation of the facts and law before filing an appeal." *Larson v. Burmaster*, 2006 WI App 142, ¶45, 295 Wis. 2d 333, 720 N.W.2d 134 (citation and emphasis omitted). An appeal is frivolous if "the party or the party's attorney knew, or should have known," that it is "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." WIS. STAT. §§ 809.25(3)(c)2. and 895.044(1)(b). Statutes authorizing sanctions for frivolous filings serve an important function in helping to "maintain[] the integrity of the judicial system and the legal profession." *Sommer*

24

*v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981). Nevertheless, this is "'an especially delicate area,'" and "court[s] must be cautious in declaring [actions or appeals] frivolous" to avoid stifling the development of the law. *Juneau County v. Courthouse Emps.*, 221 Wis. 2d 630, 640, 585 N.W.2d 587 (1998) (citation omitted).

¶51 For Stevens to prevail on her motion, we must conclude that Gonfiantini's "entire appeal is frivolous." *Thompson v. Ouellette*, 2023 WI App 7, ¶44, 406 Wis. 2d 99, 986 N.W.2d 338. An appeal is frivolous in its entirety when an element, issue, or argument "necessary to succeed on appeal" is supported solely by frivolous arguments. *Id.* Whether an appeal is frivolous is a question of law. *Howell v. Denomie*, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621.

¶52 Here, as we have explained, the disputed issue is a legal question that turns on the unambiguous language of WIS. STAT. §§ 6.88(2)(a), 7.52(4), and 9.01(1)(b). In those statutory sections, the legislature expressly directed which ballots should be counted and which should be rejected in Wisconsin elections and recounts, including in the specific context raised here. It was not necessarily unreasonable for Gonfiantini to challenge the unendorsed ballots during the recount—the ballots should have been endorsed under WIS. STAT. §§ 6.87(1) and 7.37(4), and she had a right to challenge those ballots under § 9.01(5). However, after the Board of Canvassers and the circuit court both rejected Gonfiantini's challenge on legal grounds based on unambiguous statutory language, it was frivolous for Gonfiantini to appeal to this court, unless she could advance a legal argument that the statutes do not mean what the Board and the circuit court said they mean.

25

¶53 One indication of a frivolous appeal is if it is supported solely with "irrelevant facts, statutes, and cases" or "innuendo." *Schapiro v. Security Sav. and Loan Ass'n*, 149 Wis. 2d 176, 441 N.W.2d 241 (Ct. App. 1989). Here, Gonfiantini does not cite any statutory language that supports her argument that unendorsed ballots should not be counted in an election, nor does she make any nonfrivolous argument addressing the statutes that are dispositive. She instead relies primarily on an argument that we have described as fatuous—that by citing and summarizing a prior court of appeals decision, the *Logic* court resurrected the now-repealed statutory language upon which the decision it summarized was based. Gonfiantini's misconstruction of the *Logic* decision further supports our conclusion that her appeal is frivolous. *See Larson*, 295 Wis. 2d 333, ¶47 (an appeal was frivolous when the appellant "cite[d] irrelevant authority and misconstrue[d] the authority cited"). Finally, Gonfiantini makes unspecified assertions that there could have been fraud in the election at the same time that she acknowledges that she has no evidence of fraud. Under the circumstances, we conclude that Gonfiantini's appeal is supported solely by frivolous arguments and innuendo, and that the entire appeal is frivolous. Pursuant to WIS. STAT. §§ 809.25(3)(a) and 895.044(5), Stevens will be awarded the costs, fees, and actual reasonable attorney fees she incurred in responding to Gonfiantini's appeal to this court.

¶54 The parties do not weigh in on who should be responsible for paying the sanctions award. We have authority to direct that the award be assessed fully against Gonfiantini, fully against her attorney, or against Gonfiantini and her attorney alike. WIS. STAT. §§ 809.25(3)(b), 895.044(6). Under the circumstances here, we conclude that Gonfiantini's attorney will be solely responsible for the award. It is an attorney's responsibility to research the applicable law and advise

clients on the merits of legal arguments, and here, the lack of any nonfrivolous legal argument should have been apparent to any attorney who undertook a reasonable investigation into the merits of the appeal.

¶55 We therefore remand the matter to the circuit court to determine the amount of costs, fees, and actual reasonable attorney fees and to enter an order assessing that amount against Gonfiantini's attorney.

## CONCLUSION

¶56 For all of these reasons, we reject Gonfiantini's arguments and affirm. We separately grant Stevens' motion for costs, fees, and actual reasonable attorney fees based on our determination that Gonfiantini's entire appeal to this court is frivolous.

*By the Court.*—Order affirmed and cause remanded.

Recommended for publication in the official reports.